ELIZA JANE WRIGHT, as *Administratrix of the Estate of R. H. Wright*, v. JAMES W. WRIGHT.

**No. 10037.**

1. CROSS-EXAMINATION — *as to ownership of funds, not authorized by testimony in chief identifying certificate of deposit and signature and showing payment.* The testimony of a witness, upon direct examination, merely identifying a certificate of deposit of money and the signature of the payee thereof, with a statement that such certificate had been paid by the bank issuing it, does not authorize a cross-examination as to the ownership of the money represented by it.

2. COURT STENOGRAPHER — *having no independent recollection, may read notes of a witness's testimony given on a former trial.* An official court stenographer who has correctly taken the testimony of a witness may read his notes of such testimony as evidence upon a subsequent trial, although he has no independent recollection of such testimony, and can relate the same only by reading his notes thereof.

3. OPINION OF WITNESS — *based, as to a fact, on testimony of another witness heard by him, incompetent.* It is error to permit a witness who has heard the testimony of another witness upon another trial as to a matter in issue, to give his opinion as to the truth of such matter derived from hearing such testimony.

Error from Sumner District Court. Hon. J. A. Burnette, Judge. Opinion filed October 9, 1897. *Reversed.*

*J. S. Dey* and *Levi Ferguson*, for plaintiff in error.

*W. W. Schwinn*, for defendant in error.

DOSTER, C. J. The defendant in error sued the plaintiff in error upon a promissory note ; and she, by way of set-off, alleged in her answer that plaintiff had wrongfully possessed himself of a certificate of deposit of money belonging to her intestate and had wrongfully converted such money and certificate to his own use. The material question in the case was : To

whom did the money represented by the certificate belong—the plaintiff, or the deceased ?

W. H. Burks, cashier of the bank which issued the certificate, being called as a witness by the defendant, produced and identified it. It was made payable to the deceased, R. H. Wright, and bore his indorsement. The witness testified to its payment to another bank which held it and had forwarded it for collection. This was the extent of his testimony in chief. On cross-examination, the court permitted the plaintiff to draw out matter tending quite strongly to show that the money represented by the certificate belonged to the plaintiff, and not to R. H. Wright, in whose name it was issued. This is alleged as error.

Previous to the trial, the plaintiff had been in litigation with another person, and had given testimony to the effect that the money represented by the certificate belonged to R. H. Wright, and not to himself. The defendant desired to prove the admissions thus made, and called as a witness the official court stenographer who had taken the plaintiff's testimony in the former case. This witness produced his notes of the testimony in question, and said he knew he had taken such testimony correctly, but that he had no recollection of it so as to give even its substance, and could only give it by reading from his notes; that independent of such notes he had a recollection of some striking features in the testimony, but he would not undertake to give anything like the substance of it without referring to them, although he remembered certain expressions the witness had used. The following questions were then asked : '' Can you remember the testimony of a witness given at the trial, where you report his evidence in short hand, as well from having reported such testimony as you could by sitting in the court-room and

listening to the testimony?" The witness answered "No, sir," and gave reasons why he could not do so. "Then, do I understand you to say that you would depend entirely, absolutely, and exclusively upon the characters made by you at the time the testimony was taken, as to what the testimony of the witness was, and not on your memory at all?" The witness answered "Yes," and added that teachers of the stenographic art insisted that such should be done. The defendant then asked that the witness be allowed to read his notes of the testimony in question; which request was refused. He then offered to introduce in evidence a type-written translation of such notes, which offer was also refused. This is likewise alleged as error.

For the purpose of proving the admissions attributed to the plaintiff upon the trial of the former case, the defendant offered as a witness, James A. Ray, a former judge of the district court, before whom such case had been tried, and who gave testimony tending to prove that plaintiff had admitted that the money represented by the certificate belonged to R. H. Wright, and not to himself. Upon cross-examination the following questions were asked of Judge Ray:

"From hearing the whole of Mr. Wright's testimony, did it cause any impression on your mind as to whom the money belonged to?" "Yes, sir."

"State what that impression was." "My opinion was it was Mr. Wright's money."

Re-direct examination. "Which Mr. Wright's?" "Mr. James W. Wright."

"From what he said about it?" "Yes, sir; I would say from his testimony I would regard it as his money."

The admissibility of this witness's testimony, thus given on cross-examination, as to his impressions or

opinions concerning the ownership of the money, is also alleged as error.

The cross-examination of the witness Burks as to the ownership of the money represented by the certificate of deposit issued in the name of R. H. Wright, was quite irregular. His direct testimony was in identification of the certificate and the signature of indorsement of the payee, and as to the payment of the certificate by the bank which had issued it, and related to nothing else. This laid no foundation for a cross-examination as to the real ownership of the certificate or money. However, the testimony of the witness as to such ownership was not incompetent, irrelevant, or otherwise inadmissible. The plaintiff was entitled to such testimony by making the witness his own, and the fact that it was obtained from him out of time, and upon cross-examination without a foundation therefor having been laid, does not constitute, of necessity, reversible error. But such departures from the established and orderly course of examination of witnesses might be in many cases sufficiently prejudicial to warrant an order for a retrial; and while we make no such order in this case for the reason of this error, we strongly advise against the allowance in any case of such irregular habit of procedure.

1. Cross-examination not authorized as to what.

The question of the admissibility of the testimony of the stenographer in proof of what the plaintiff had sworn to upon a former trial, is interesting and important. The rule of many of the older cases was that a witness might refresh his memory, as to forgotten matter about which he was called upon to testify, by reference to a memorandum of the same made at the time or very soon thereafter; having done which, he might then

2. Court stenographer may read notes in evidence.

testify; but in such case his testimony must be from memory and not from the memorandum. The liberalizing tendency of the courts has now enlarged the rule so as to include cases where the witness is still unable to testify from memory, after an examination of the memorandum, but is able to identify such memorandum as made by himself, at or near the time of the transaction to which it relates, for the purpose of preserving a true account of it, and that he knows it to have been truly and correctly made. In such cases, he may give the contents of the memorandum as his own evidence.

"The fact that the witness has no recollection independent of the notes, does not exclude his testimony as to the facts stated in the notes, when he states that it was his uniform and unvarying practice to make true notes of events of the character noted, immediately after the occurrence of the events, and that the memoranda are parts of the notes in question." 1 Wharton on Evidence, § 518.

"When a witness has so far forgotten the facts that he cannot recall them, even after looking at a memorandum of them, and he testifies that he once knew them and made a memorandum of them at the time or soon after they transpired, which he intended to make correctly, and which he believes to be correct, such memorandum, in his own handwriting, may be received as evidence of the facts therein contained, although the witness has no present recollection of them." Rice's Evidence, 745.

"If, however, the witness, at or about the time the memorandum was made, knew its contents, and knew them to be true, this legalizes and lets in the testimony of both the witness and the memorandum. The two are the equivalent of a present positive statement of the witness affirming the truth of the contents of the memorandum." *Acklen v. Hickman*, 63 Ala. 494.

Some of the cases go even farther, and allow a sim-

34—58 KAN.

ilar use of a memorandum made by another, if known by the witness to be correct, as that he had read it very soon after it was written and then knew it to speak the truth.

Can there be any doubt that the notes of an official court-stenographer are memoranda which fall within the rule above quoted? We think not. That the testimony of witnesses and the speech of people generally can be faithfully — literally — recorded by persons skilled in the stenographic art is known to everybody. It is the almost universal habit of courts, under the authority of statutes, to employ such persons for this purpose. Their work is performed under the sanction of an oath, and provision is made in this State for the preservation of their notes for future reference and use. Were it possible to write the testimony of witnesses in long hand, as it is delivered by them, no question could be raised as to the right of a witness who had correctly recorded it to read it to the jury, although all memory of it had passed from his mind. Does the fact that it was written in characters unintelligible to persons who have not familiarized themselves with shorthand systems of penmanship make any difference? If it does, the basis for the allowance of much expert testimony is in danger of being demolished. The stenographer in this case testified that he had correctly taken the testimony of the witness Wright; and the fact that he had no independent recollection of such testimony after reading his notes, does not preclude him from giving to the jury what he knew to have been correctly done at the time it was performed.

The cross-examination of the witness Ray, as to his opinion concerning the ownership of the certificate of deposit, derived from listening to the notes and testi-

3. Opinion evidence incompetent, when.

mony of the witness Wright, was clearly erroneous. The rule is fundamental that the opinions of witnesses are not receiv-able as evidence. To this there are, of course, such exceptions as the opinions of expert witnesses, and facts which cannot well be presented in any other way than in the form of an opinion, as that a man was drunk, or insane, etc.; but the testimony in question falls within none of these rules of exception and should not have been received.

Other claims of error are based upon certain evidence received and certain instructions given. They are not well taken; but, for the rejection of material evidence in the one case and the erroneous admission of evidence in the other, the case is reversed and a new trial ordered.