No. 28,495.

George Lukens, *Appellee,* v. Fred H. Kellogg and Vernon H. Kellogg, Partners as Kellogg Brothers Feed and Seed Company, *Appellants.*

(274 Pac. 225.)

Opinion filed February 9, 1929.

*Clyde E. Souders, Otto R. Souders,* both of Wichita, and *O. R. Nelson,* of Hutchinson, for the appellants.

*Samuel Griffin,* of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action to recover the value of four loads of wheat stolen from plaintiff in Barber county and which he alleged had been purchased from the thief or otherwise received by the defendants in Wichita.

Plaintiff prevailed before the jury and judgment was entered in his behalf.

Defendants appeal, assigning various errors which center around their main contention that the evidence was not sufficient to establish the fact that they had received the stolen grain.

On this point the plaintiff's evidence favorably considered tended to show that plaintiff was a Barber county farmer who resided near Medicine. Lodge, about 100 miles' west of Wichita. In 1926 he raised several thousand bushels of wheat, which he stored in various bins, one of which was a 1,000-bushel steel bin on the near-by farm of one Wetz. On August 13, 1926, plaintiff discovered that about 250 bushels of wheat had been stolen from that bin. In his efforts

to discover what had become of his wheat and who had taken it, plaintiff met one Clyde Pennington who was in the Barber county jail for some offense. It may be inferred—but does not appear in evidence—that Pennington informed plaintiff that he had stolen the wheat. Later Pennington gave a deposition in plaintiff's behalf in which he testified:

"My business is common labor, . . . hauling wheat. . . . I know George Lukens and where his grain bin is. During the month of August I took four loads of wheat from his bin. I could not give the exact dates, about the 1st, 2d, 3d, 4th and 5th of August, 1926, at about four o'clock in the morning. . . .

"I took it out of the bin and hauled it about one-half mile up the road. . . . I delivered the wheat to the fellow that I was working for, he called himself Turner."

It was also shown in evidence that Pennington shortly prior to the theft of the wheat had purchased a new Ford truck with a grain box which would hold about sixty bushels of wheat. The truck was equipped with a Warford transmission which would enable it to travel on good roads at thirty-five or forty miles an hour. There was testimony that such a truck as Pennington's had been seen going to and fro in the neighborhood of plaintiff's wheat bin at unseasonable hours of the first few nights of August, 1926. It was also shown that Pennington owed about $300 on the truck and that his brother also had a truck purchased on time from the same dealer. It was also shown that Pennington had an aunt who had married a railway conductor of the name of L. J. Ernhart. On the same dates on which the four loads of wheat had been taken from plaintiff's bin, August 2, 3, 4 and 5, 1926, four loads of wheat were weighed over the scales of the West Side Coal Yard in Wichita and purchased by defendants and paid for by their checks of the same dates, two of which were payable to "L. Amhart" and two to "L. Arnhart." The four loads thus purchased aggregated approximately as many bushels as were stolen from plaintiff's bin ninety-six miles away. The total proceeds of the checks were $326.04. Within a day or two after these checks were issued and cashed by somebody who indorsed them as payee, Pennington made a final payment of $300 on the purchase price of his new truck and paid $100 on the purchase price of his brother's truck.

The foregoing constitute the principal facts of plaintiff's case against Kellogg brothers, defendants herein. However, plaintiff

also testified that after he discovered the wheat had been taken he and the sheriff sought unsuccessfully to locate the stolen wheat by inquiring at every elevator in the villages and cities of Pixley, Sharon, Hardtner, Gerlane, Lake City, Sawyer, Isabel, Cunningham and Attica. How plaintiff obtained a clue that the wheat might have been taken to Wichita does not appear.

Do the foregoing facts considered in their most persuasive attitude tend to prove that Kellogg Brothers in Wichita were the recipients of plaintiff's stolen wheat? In a city of the size of Wichita there are many wheat buyers. In the early days of August every buyer receives many loads of wheat. In the business of hauling wheat Ford trucks are as familiar nowadays as farm wagons. It was plaintiff's theory of this case that Pennington, having a new high-speed truck, had rushed a load of the stolen wheat to Wichita, ninety-six miles away, in the early morning hours on each of the four successive days indicated by the dates of the checks issued by defendants, and that he had rushed back to Medicine Lodge so as to be seen thereabout every day in the event it should become necessary for him to prove an alibi touching his whereabouts on the days the stolen wheat was delivered in Wichita. It is not quite clear just how plaintiff disposed of or explained away that part of the testimony of his own witness, Pennington, which was that he turned the stolen wheat over to one Earl Turner a half mile up the road from where it was stolen, some ninety-five or ninety-six miles from Wichita. In his brief he argues that it was quite possible for this truck—

"After it was loaded at the Lukens' bin at two or three o'clock in the morning could travel from the Lukens' place to Wichita in about three hours and this would put him into Wichita about six or seven o'clock in the morning."

Plaintiff also ventures the conjecture—

"That Clyde Pennington may have had an accomplice who weighed the wheat, delivered it and cashed the check and the fact that Clyde Pennington paid a down payment of $100 on the 6th of August, 1926, on a truck for his brother, Fred, might lead one to believe that his brother was the accomplice."

It was also the theory of plaintiff, apparently, that Pennington had used the name of his aunt's husband, L. J. Ernhart, as the nominal vendor of the wheat, as part of his plan to market the wheat and collect the proceeds without having his own name in the

transactions, and that the name "Ernhart" naturally suggested itself to him because he was familiar with it through Mr. Ernhart's marriage to Pennington's kinswoman.

In addition to their general verdict for plaintiff, the jury answered a special question submitted by the court:

"9. Do you find from the evidence that the truck described as the Clyde Pennington truck was in Wichita on the following dates?

"(a) August 2, 1926? A. No.

"(b) August 3, 1926? A. No.

"(c) August 4, 1926? A. No.

"(d) August 5, 1926? A. No."

Counsel for appellee argue away this troublesome finding in this fashion:

"There was no direct evidence that the Clyde Pennington truck was in Wichita on these dates and the jury could have only inferred as much from the evidence introduced, but that was not a controlling question. There might have been a number of ways in which the wheat was finally delivered and sold to the Kellogg Brothers. It may have been transferred to the truck of Turner, if there was such a man, or to another truck used by Fred Pennington; and Clyde Pennington may have taken his truck and returned to Medicine Lodge so that he could furnish an alibi in case he was accused."

It will thus be seen that plaintiff has relied throughout this case upon theory, surmise and conjecture to piece out the gaps in the evidence requisite to establish his case against defendants. The fact that Kellogg Brothers purchased truck loads of wheat on the dates on which plaintiff's wheat was stolen proves nothing. A dozen other Wichita grain buyers probably did the same thing every day in the grain-buying season, which was at that time of year. Doubtless a hundred other buyers within one hundred miles of Barber county did the same thing. That Kellogg Brothers' checks were made payable to and cashed by one "L. Amhart" and by "L. Arnhart," and that Pennington, the wheat thief, had an aunt who had married a railway conductor of the somewhat similar name of "L. J. Ernhart" is too remote and too trivial an incident to fasten civil liability on Kellogg Brothers for receiving the stolen wheat.

In *Carruthers v. C., R. I. & P. Rly. Co.*, 55 Kan. 600, 603, 604, 40 Pac. 915, an Iowa case was cited approvingly which held that a theory cannot be said to be established by circumstantial evidence, even in a civil case, unless the facts relied upon are of such a na-

ture and are so related to each other that it is the only conclusion that can reasonably be drawn from them, and that it is not sufficient that they be consistent merely with that theory. In *Railroad Co. v. Aderhold,* 58 Kan. 293, 298, 49 Pac. 83, it was said that liability cannot be fixed on a bare guess, nor can a verdict rest on mere conjecture. In *Duncan v. Railway Co.,* 82 Kan. 230, 108 Pac. 101, it was held:

"Where there is no substantial evidence, direct or circumstantial, tending to prove a material fact in issue, a finding that it exists cannot be sustained." (Syl. ¶ 2.)

In *Norman v. Railway Co.,* 101 Kan. 678, 682, 168 Pac. 830, it was said that probabilities and plausible conjecture are not evidence.

In *Ogg v. Ogg,* 124 Kan. 443, 446, 260 Pac. 647, it was said: "The record . . . discloses nothing more than surmise. And surmise, conjecture, speculation, plausibility, do not supply the want of proof."

See, also, *Cash v. Oil Refining Co.,* 103 Kan. 880, 889, 176 Pac. 980; *Beeler v. Railway Co.,* 107 Kan. 522, 192 Pac. 741.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for defendants.