No. 34,611

CHRISTOPHER SCHMIDT, *Appellant,* v. TWIN CITY STATE BANK, *Appellee.*

(100 P. 2d 652)

668

Opinion filed April 6, 1940.

*Leonard O. Thomas, Arthur J. Stanley, J. E. Schroeder* and *Lee E. Weeks,* all of Kansas City, for the appellant.

*Louis R. Gates* and *Frank L. Hagaman,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action against a bank to recover damages alleged to have been sustained by reason of loss of gold coins and currency deposited in a rented safety-deposit box. Defendant prevailed, and plaintiff appeals.

Between July 1, 1932, and May 21, 1935, inclusive, plaintiff deposited gold coins and currency in a safety-deposit box which he rented from the bank under an oral contract. The contract was later reduced to writing. Part of the gold coins had been given to plaintiff for deposit by a friend. The total deposit was alleged to have consisted of $2,000 in currency and $1,024 in gold coins. When plaintiff examined the box on September 28, 1935, the coins and currency were missing. Plaintiff did not return from the vault for some time and an employee of the bank entered the vault and found plaintiff had fainted and was lying on the floor. Several weeks later, plaintiff returned to his box with an attorney and found a package of nails in the box.

The second amended petition, in substance, alleged: Prior to August 1, 1932, plaintiff rented a safety-deposit box from the defendant under a written agreement now in the possession of the defendant, and continued to so lease the box until the 28th day of June, 1936; within that period he made deposits at various times in the total sum of $3,025 in lawful money of the United States; he did not at any time on or after the 23d day of February, 1934, and prior to the 28th day of September, 1935, examine or inspect the contents of a package containing the sum of $2,775, and that he did not, after May 21, 1935, and prior to the 28th day of September, 1935, examine or unwrap the package containing the sum of $250; upon examining the box on September 28, 1935, both packages had been withdrawn; plaintiff had no knowledge as to when the money was withdrawn; neither the plaintiff, his agents, assignees nor deputies had, prior to said date, or on said date, withdrawn any of the coin or currency; the vault in which the safety-deposit box was kept was

at all times maintained and managed by the defendant, its agents, servants and employees; defendant does not know the names of the person or persons who illegally and unlawfully withdrew the money; on October 23, 1936, plaintiff made written demand on defendant for the return of the currency and coin, and defendant refused to deliver any part thereof.

Defendant's answer alleged plaintiff had rented safety-deposit box No. 128 from the defendant under an oral agreement which was reduced to writing on June 29, 1936. The pertinent portion of the contract read:

"The liability of the bank is expressly limited to the exercise of ordinary diligence to prevent the opening of the within-mentioned safe during the within-mentioned term, or any extension or renewal thereof, by any person other than the renter or his duly authorized representative, . . ."

The answer further, in substance, alleged: Defendant fully performed all of its obligations and duties under the contract; on June 29, 1936, plaintiff executed a release, which was as follows:

"KANSAS CITY, KAN.,
"June 29, 1936.

"I hereby acknowledge the receipt and certify that all the papers and other property placed within the safe-deposit box No. 128 in the safe-deposit vault of The Twin City State Bank of Kansas City, Kansas, in pursuance of my contract therefor, have been duly and properly withdrawn therefrom and are in the owner's full possession, and said bank is discharged from all liability in respect thereto, two keys to said box being surrendered.

Signature   C. SCHMIDT.
Witness:
    E. MAGNUSON.
    MAX LEUPOLD."

The answer contained a general denial as to all matters contained in the amended petition except such as were admitted, stated and qualified by the answer. The answer was verified.

In the reply plaintiff denied defendant had performed its obligations under the contract and, in substance, further alleged: Defendant maintained or managed the vault in a negligent and careless manner, in that it failed and neglected to take reasonable or proper precautions to safeguard the contents of the box and had failed to deliver the contents thereof upon demand. He did not sign the release, but if he did sign it, the signature was procured by the fraud of the defendant, its agents, servants and employees; he could not read the printed matter on the release and was orally informed it was necessary to sign the release in order to be relieved of liability

for future rentals, which was the only purpose of requesting his signature; the statements were false and were fraudulently made for the purpose of procuring the release; plaintiff relied upon the statements; if the agent of defendant making the statements believed them to be true, which plaintiff denies, the release was executed as a result of mutual mistake.

It will serve no useful purpose to narrate all the evidence in detail. Plaintiff's evidence in chief conformed substantially to the allegations contained in the second amended petition, except as to the dates upon which he last inspected the box. We shall presently discuss the evidence concerning inspections of the box by plaintiff. We may, however, now state that the variation between the allegations in the petition and the proof touching the inspection of the box by plaintiff become highly important. At the conclusion of plaintiff's evidence, the defendant filed the following motion:

"Now at the close of the plaintiff's evidence comes the defendant and moves the court to strike from the record all the evidence offered on behalf of the plaintiff concerning any gold coins in the safety-deposit box of the plaintiff which remained there thirty days after the promulgation of executive order No. 6260, promulgated August 28, 1933, insofar as said gold coins exceeded an amount in the aggregate the sum of one hundred dollars belonging to any one person."

Defendant also demurred to plaintiff's evidence upon the ground the evidence failed to overcome the bar to plaintiff's recovery arising from the release admitted to have been executed by the plaintiff.

The court withheld its ruling on the motion and demurrer until all testimony in the case was introduced. The defendant proceeded with its proof. Its evidence disclosed the vault and safety-deposit box were managed and safeguarded with modern accepted methods after May 31, 1935, and that the bank had no knowledge of the mystery of the alleged loss. The evidence also disclosed an inspection of plaintiff's box by an expert showed the box had never been opened by use of force.

In rebuttal, plaintiff showed that an employee of the bank by the name of Howard F. Yearin had charge of the general ledgers and posted the individual ledgers, and that one person should not do both. Plaintiff also offered in rebuttal the criminal appearance docket and the journal entry of judgment in the case of *State v. Howard F. Yearin*. The purpose of that offer was to show that Yearin, a former employee of the defendant bank, was convicted of embezzling funds from the bank and that the information charged

Yearin with embezzling the sum of $17,500 during the period beginning the first day of July, 1934, and ending June 1, 1935. In connection with that proffer, the record discloses the following:

"Mr. Gates: I object to that as incompetent, irrelevant and immaterial.

"The Court (during argument): Do you claim that this man Yearin took money from the safe-deposit boxes?

"Mr. Weeks: No.

"The Court: The objection to the offer will be sustained."

Plaintiff contends he was not obliged to prove who obtained the money from his box and that the proffered testimony was proper for the purpose of showing the bank was negligent in having in its employ a man of Yearin's character. The testimony disclosed Yearin, on several occasions prior to June 1, 1935, had entered the vault by himself, at plaintiff's request, and had brought the safety-deposit box to the plaintiff, outside of the vault. There was no evidence the money disappeared on those occasions. Yearin's employment in the bank ceased on the 31st day of May, 1935.

Plaintiff's principal contention is defendant's evidence did not show defendant exercised reasonable care in the management and control of the vault and safety-deposit box between May 21, 1935, and the date of Yearin's discharge, on May 31, 1935. The difficulty with plaintiff's contention in that respect is that the bank, in view of plaintiff's own evidence, was not obliged to introduce testimony concerning its diligence in the management, care and control of the vault and safety box prior to June 1, 1935. Plaintiff had definitely testified, contrary to the allegations in his second amended petition, that he had gone to his box on several occasions during the months of June, July and August of 1935, and that the large package which contained $2,775 and the small package which contained $250 were both in the box. He testified he saw both packages on those visits in June, July and August of 1935 and that both were still "all right." In view of plaintiff's testimony, the employment of Yearin did not establish negligence on the part of defendant which caused or contributed to plaintiff's damage.

Plaintiff testified he signed the release. Evidence that his signature to the release was obtained by fraud or mutual mistake was very meager. But we need not discuss the sufficiency of that testimony. The ruling denying recovery does not appear to have been based upon the release.

Relative to the gold coins, plaintiff admitted he made no report

to the United States government concerning the gold, and received no permission from the government to hold gold coins.

At the conclusion of the trial the court ruled upon defendant's motions and demurrers as follows:

"(1) That defendant's two motions to strike, being all of the written motions to strike, filed at the close of plaintiff's evidence and directed to plaintiff's evidence as to the alleged loss of the gold coins from his safety-deposit box, be and the same are each respectively hereby sustained for the reason that the title, if any, of the plaintiff and Maude Heath in and to all of said gold coins alleged to have been lost from plaintiff's safety-deposit box was extinguished in them and passed to and vested in the United States of America by virtue of the laws of the United States then in force and effect and for the further reason that under the laws of the United States then in full force and effect, neither the plaintiff or Maud Heath could have lawfully acquired title to any gold coins alleged to have been deposited in said safety-deposit box after the date of August 28, 1933.

"(2) That the defendant's demurrer as to gold coins filed at the close of the plaintiff's evidence be and the same is hereby sustained for the reason that the plaintiff has failed to prove any measure of damages or value of the gold coins alleged to have been lost and for the reason that the title, if any, of the plaintiff and Maud Heath in and to all of said gold coins alleged to have been lost from plaintiff's safety-deposit box was extinguished in them and passed to and vested in the United States of America by virtue of the laws of the United States then in force and effect.

"(3) That the defendant's general demurrer to the plaintiff's evidence, filed at the conclusion of plaintiff's evidence, be and the same is hereby overruled.

"(4) That defendant's demurrer to all of the evidence offered by the plaintiff, filed at the close of all of the evidence, be and the same is hereby sustained for the reason that the evidence offered on behalf of the plaintiff has failed to prove nor does it tend to prove facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant in that; that there is no showing of negligence on the part of the defendant constituting the proximate cause of the alleged loss of the plaintiff, if any."

The motion to strike the evidence pertaining to gold coins was properly sustained. (12 U. S. C. A., § 95, *Executive Order* 6260, §§ 3, 4, 5; 31 U. S. C. A., § 443; *Uebersee Finanz-Korporation, etc., v. Rosen*, 83 F. 2d 225; *Nortz v. United States*, 294 U. S. 317, 79 L. Ed. 912; *United States v. 98 $20 United States Gold Coins et al.*, 20 Fed. Supp. 354.)

Furthermore, if the court properly sustained the general demurrer to plaintiff's evidence, plaintiff was not entitled to recover for the loss of either the gold coins or currency. Plaintiff insists the relationship of the parties was that of bailor and bailee. Defendant contends the relationship was more properly characterized as that

of lessor and lessee. We do not think it necessary to define the precise legal relationship between the parties. The question of the bank's liability was tried and determined upon the issue of the bank's negligence. Plaintiff at all times had possession of two keys to his box. Defendant at all times had possession of the guard key, also referred to as the master key. Both sets of keys were required to obtain access to the contents of the box. The bank, therefore, did not have exclusive possession of the box nor of its contents. There was no evidence anyone had tampered with the box. The evidence of an expert was that there was no indication of tampering. After plaintiff introduced his evidence in chief and made a prima facie case, the court required defendant to proceed with its proof on the subject of due care. Its evidence showed that in safeguarding the contents of the box it had employed such measures as were customarily used in the community by other banks operated under modern methods and that it had no knowledge of the mysterious disappearance of the coins or currency. To defendant's evidence the plaintiff did not demur, but undertook, in accordance with the issues joined by the pleadings, to show negligence on the part of the defendant. In that attempt plaintiff failed. In support of his contention the defendant was negligent, plaintiff indulges in a presumption which is based upon another presumption or presumptions. A conclusion of negligence cannot be reached in that manner. (*Railway Co. v. Rhoades,* 64 Kan. 553, 68 Pac. 58; *Lukens v. Kellogg,* 127 Kan. 568, 274 Pac. 225; *Shoeman v. Temple Safety Deposit Vaults et al.,* 189 Ill. App. 316; 20 Am. Jur. 168, Evidence, § 164.)

Assuming the relation of the parties was that of bailor and bailee, as contended by plaintiff, defendant's duty was to exercise ordinary care and diligence, that is, such care and diligence as a reasonably prudent person or corporation would exercise under like circumstances in safeguarding the contents of the box. Defendant was required to take such measures to safeguard the property upon deposit as are customarily used in the community by ordinarily careful institutions, fairly comparable in size and other conditions with the defendant bank. (67 C. J., *Warehousemen and Safe Depositaries,* § 300; 27 R. C. L., *Warehouses,* § 45; *Shoeman v. Temple Safety Deposit Vaults,* supra; *Young v. First Nat. Bank of Oneida,* 150 Tenn. 451, 265 S. W. 681, 40 A. L. R. 868; *Morgan v. Bank,* 190 N. C. 209, 129 S. E. 585, 42 A. L. R. 1299. See, also, *Annotation,* 40 A. L. R. 874, 878.)

Plaintiff contends defendant is held responsible for more than the exercise of reasonable diligence and care. He contends defendant is required to explain the disappearance of the property. There is some authority to that effect. However, it appears to be predicated upon the theory that the bank has the exclusive possession of the property and therefore also has the exclusive means of knowing what becomes of it. It appears to us the facts do not warrant the theory. As heretofore indicated, the bank did not have exclusive access to the box. It did not have exclusive possession of the property in the box, nor did it have the exclusive means of knowing what became of it. If plaintiff's theory of the bank's responsibility be sustained, then a depositor may remove the contents from his box, in the privacy of his booth, and hold the bank liable by reason of its inability to explain the disappearance. It seems to us such a rule would place too great a burden upon the depositary. It would practically make the bank a guarantor of the safety of funds or property deposited without giving it exclusive control thereof. We think the better rule is the one which holds the depositary to the exercise of reasonable diligence and care for the preservation of the property entrusted to it.

The judgment is affirmed.