No. 45,101

LOREN MATHIS, an Individual, and LOREN L. MATHIS, Special Administrator of the Estate of GRACE MATHIS, Deceased, *Appellees*, v. RUTH HELENA STRICKLIND, *Appellant*.

(443 P. 2d 673)

Opinion filed July 13, 1968.

*John M. Reiff*, of Wichita, argued the cause, and *Eugene C. Coombs, Sidney J. Brick, William H. Dye* and *David Egan*, all of Wichita, were with him on the brief for the appellant.

*Dan J. Skubitz* and *Robert C. DauffenBach*, both of Wichita, argued the cause and were on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is a conversion action in which the defendant is charged with converting $64,801 from safety deposit boxes in the First National Bank and the Fourth National Bank of Wichita, Kansas. A jury returned a verdict for the full sum claimed in favor of the plaintiff who sued in his individual capacity and as special administrator of the estate of his deceased wife, and the lower

court entered judgment thereon. Appeal has been duly perfected by the defendant.

The appeal presents what is primarily a fact case, but other questions concerning the admission of evidence and the giving of instructions are involved.

Loren Mathis is the father of the defendant, Ruth Helena Stricklind, the only daughter of his first marriage. Grace Mathis, the mother of the defendant, died on the 26th day of December, 1962, and at the time of her death Loren and Grace, as husband and wife, had accumulated an estate consisting of real property, bonds, a savings account and cash totaling approximately $90,000.

On May 27, 1963, Loren Mathis married his present wife, Myrtle Mathis. It is apparent from the record that prior thereto the intention of Loren to marry Myrtle disturbed his daughter, the defendant herein.

Prior to the death of Grace Mathis the family had gotten along well together. Grace and the defendant, Ruth, were joint tenants on the safety deposit boxes located at the First National Bank and the Fourth National Bank in Wichita. The plaintiff, Loren Mathis, was a joint tenant on the safety deposit box at the Fourth National Bank, and an agent on the safety deposit box located at the First National Bank.

A few days prior to the marriage of Loren Mathis to Myrtle, the defendant had the two safety deposit boxes drilled open. At the time Loren Mathis had the key, but since he was angry with the defendant she did not ask him for the key. The safety deposit box at the First National Bank was drilled open on May 23, 1963, at a cost of $15 to the defendant according to her testimony, and the safety deposit box at the Fourth National Bank was drilled open on the 24th day of May, 1963, at a cost of $10 to the defendant according to her testimony. The defendant's husband, Ralph Stricklind, was present when the safety deposit boxes were drilled open and the contents removed.

The defendant testified the box at the First National Bank at the time it was drilled open contained two abstracts, some United States Government bonds, and insurance policies belonging to the defendant and her husband. She testified that all of the contents of the box at the First National Bank were placed into a new box at the same bank, with the exception of the insurance policies belonging to her. The defendant testified the box at the Fourth

National Bank at the time it was drilled open had two abstracts, a thousand dollar bill belonging to the defendant, and some clips of money totaling about $567. She testified that all of the contents of the box at the Fourth National Bank were transferred to a new box at the same bank, with the exception of the one thousand dollar bill removed by her.

On May 24, 1963, after receiving advice from counsel, the defendant commenced probate proceedings for the probate of her mother's estate.

On the 2nd day of August, 1963, following the appointment of the First National Bank of Wichita, Kansas, as administrator of the estate of Grace Mathis, deceased, the boxes at the Fourth National Bank and the First National Bank, into which the defendant says she transferred the entire contents of the original boxes, were opened and inventories made. The box at the Fourth National Bank contained two abstracts, a warranty deed and sums of cash totaling $567. The box at the First National Bank contained an abstract and a number of United States Government bonds totaling $10,750 face value.

Loren Mathis was appointed special administrator of the estate of Grace Mathis, deceased, for the purpose of this action, and filed this action on May 20, 1964, as an individual and as special administrator for the estate of Grace Mathis, deceased. The petition alleged, among other things:

"4. On or about the 23rd day of May, 1963, defendant converted to her own use certain sums of currency, being $39,927.00, the same being within a safety deposit box, to which defendant has access, located at the First National Bank in Wichita, Kansas, and the further sum of $24,874.00, the same being within a safety deposit box to which defendant had access, located at the Fourth National Bank and Trust Company in Wichita, Kansas. That said sums of money totaling $64,801.00 were at all times the property of Loren L. Mathis and Grace Mathis.

"Loren L. Mathis, individually, deposited a sum equal to 82.9% of the said sums of money or $53,920.03, and Grace Mathis deposited a sum equal to 17.1% of the sums of money or $11,080.97."

To prove the foregoing claim Loren testified that the cash in the two safety deposit boxes converted by the defendant was kept in bundles and in each box it was placed in an accordion-type envelope; that on December 3, 1962, he and Grace counted the cash in the safety deposit box at the First National Bank and that he made an inventory thereof. He also testified that on the 4th day

of December, 1962, he and Grace counted the cash in the safety deposit box at the Fourth National Bank and that he made an inventory thereof. The bank records introduced into evidence disclose visits by both Loren and Grace to the safe deposit vaults at the Fourth National Bank on the 4th day of December, 1962, at 10:01 a. m. and again at 1:15 p. m. The bank records at the First National Bank disclose that Grace Mathis made visits to the safe deposit vaults on the 3rd day of December, 1962, at 10:01 a. m. and 12:45 p. m. Loren testified that the count of cash in the safety deposit box at the First National Bank was made at the defendant's house.

Plaintiff's Exhibit 4A, consisting of three pages, was admitted in evidence by the trial court. The first two pages show an inventory of the assets in the Fourth National Bank made by Loren on the 3rd day of December, 1962, (except for small sums in a separate clip) and the third sheet shows an inventory of the assets contained in the First National Bank made by Loren on the 4th day of December, 1962. With respect to the Fourth National Bank the inventory discloses twenty-nine entries consisting of bundles of cash, in which the amount in each bundle is individually set out, totaling $24,874. The third sheet discloses twelve entries consisting of bundles of cash in which the amount in each bundle is individually set out, totaling $39,927. At the bottom of page two of Exhibit 4A is what purports to be a recapitulation of the assets disclosing the foregoing sums of cash, a deposit of $7,941.99 in the Fourth National Bank (stipulated to be the correct amount of a joint savings account in such bank), plus bonds of $11,282, for a total sum of $84,024.99 in total assets. Several other notations on the exhibit were explained by Loren to the best of his ability.

The defendant had two sons by a prior marriage named Lawrence Whipple and Larry Whipple. Both testified in this case. Lawrence Whipple and his family had lived in Wichita until August, 1962, shortly before the death of Grace, when they moved to Denver, Colorado. While the defendant in the trial of this case professed no knowledge as to the worth of Loren Mathis, she told her son, Lawrence Whipple, on the 13th day of June, 1963, while she and her husband were visiting in Denver, that they had taken $50,000 and $30,000 from the two safety deposit boxes in Wichita, Kansas; that she knew this because they had counted it on December 3,

1962, before his grandmother (Grace Mathis) died. She further told Lawrence Whipple that she and her husband had left enough to take care of Loren the rest of his days, but they took the rest of it because they thought it belonged to them. The subject was again discussed by the defendant on June 16, 1963, for two or three hours, at the home of Larry Whipple in Westminster, Colorado, in the presence of the defendant's husband, his children, her two sons, and the wife and children of Lawrence Whipple. At that time substantially the same statement was made by the defendant. She told Lawrence Whipple that he could use the sum of $10,000 and his brother could use a like sum. She also told her son that Loren Mathis had offered her $20,000 as a settlement about two weeks prior to his marriage to Myrtle.

The foregoing testimony of Lawrence Whipple was corroborated by his wife, who also testified.

The defendant testified in the trial of this case concerning the $20,000 settlement offer made by her father, and said that she told her father she would have to think it over.

Larry Whipple, the defendant's other son, testified that his mother told him she did not know the exact value of the estate as "she just didn't have time to count anything. She was scared to death."

Most of the record in this case, consisting of 256 pages, is devoted to an effort by the defendant throughout the trial to show that it was impossible for Loren Mathis, on the basis of his earnings, to have accumulated a net worth of anywhere near $90,000.

The record discloses that Loren had a savings account in the amount of approximately $7,000 in 1920; that he purchased two city properties for $3,000 each in 1923 which were sold in 1942; that he purchased five additional city properties for rental purposes between 1929 and 1941. He later sold his rental properties for a profit when rent controls made it unprofitable to keep them.

After he left Missouri in 1920 he went to work for a county farm where he received $75 a month, board and a place to live. In 1925 he went to work for the United States post office in Wichita for $2,100 a year, and he worked continuously for the post office until his retirement in 1954. His last half year's income from the post office was $4,486.73 in 1953, in addition to other income. For a period of four years, from 1925 to 1929, he paid no rent for living quarters because they lived with his wife's mother.

Other testimony in the record indicated the frugal manner in which he and Grace lived throughout the years. They kept chickens for eggs and raised a garden.

Lawrence Whipple testified he would not care to live as his grandparents did; that their furniture consisted of old wicker chairs; that the only meat they ever served was hamburger or bologna, and occasionally chicken, never steak; that they had an old refrigerator for years but it finally gave out and they purchased a new one in 1958. Lawrence testified the grandparents would take home the table scraps when they visited at their home to feed their chickens. Throughout the years of their marriage Loren and Grace only owned three automobiles, one purchased in 1925 for $650; a Plymouth purchased in 1935, which he drove eighteen years, and a 1953 Chevrolet. These automobiles were purchased new and he paid cash for them. All business transactions made by Loren were in cash. Lawrence said his grandparents did not regularly buy new clothing and were not extravagant people.

Lawrence Whipple testified it was possible the way his grandparents lived to have accumulated an estate of the magnitude indicated by Loren in his testimony. It was disclosed that Grace had inherited some property and had worked for a period of time in the 1920's.

Income tax records were introduced for the years in which Loren paid taxes, and counsel for the respective parties went to great length in projecting the net earnings of Loren and Grace through the years.

Upon submission of the case to the jury it returned answers to special questions as follows:

"Question No. 1. How much cash, if any, did the plaintiff and Grace Mathis have in the safety deposit box at the First National Bank, Wichita, Kansas, on December 26, 1962, the date of Grace Mathis' death?

"Answer: $39,927.00.

"Question No. 2. How much cash, if any, did the plaintiff and Grace Mathis have in the safety deposit box at the Fourth National Bank, Wichita, Kansas, on December 26, 1962, the date of Grace Mathis' death?

"Answer: $24,874.00."

The jury by its verdict found for the plaintiff, Loren Mathis, as an individual, and entered judgment for him in the amount of $32,401. It also found for the plaintiff, as special administrator of the estate of Grace Mathis, deceased, in the amount of $32,400. Judgment was accordingly entered on the foregoing verdict.

The appellant first contends that plaintiff's Exhibit 4A should not have been admitted into evidence. Throughout the trial prior to the admission of this exhibit in evidence the appellant objected to the foundation for its admission, and the trial court continually upheld such objections until further foundation was established. The trial court finally admitted the exhibit, over the objection that it had no credence and that it was just a self-serving statement of the witness. The trial court stated in admitting the exhibit that its probative value was for the jury.

Loren Mathis testified that Exhibit 4A was an inventory of money in the safety deposit boxes at the First National Bank and the Fourth National Bank in Wichita, Kansas, in his handwriting, correct at the time the entries were made, which entries were made right after he counted the money. He further testified the exhibit was made from notes which were discarded; and that the exhibit was kept in his possession until he turned it over to counsel for these proceedings. At no time did Loren deviate from his assertion that he made the entries; that the entries were correct when they were made; that the entries were made right after the count of the money from notes which were destroyed; and that the exhibit was a correct reflection of his count of the contents of the safety deposit boxes at the First and Fourth National Banks on the respective dates of December 3 and 4, 1962.

It was obvious that an examination of plaintiff's Exhibit 4A by Loren Mathis did not revive his recollection of the matters so recorded, but that it was in fact a past recorded recollection of Loren Mathis. It has been held that since a record of past recollection, used by a witness after verification, becomes his present evidentiary statement, it may be admitted in evidence in connection with his testimony, as a part of his direct examination. The memorandum is admitted in conjunction with his testimony, as part of his direct examination, and is auxiliary to the oral evidence of the witness, whether the witness on seeing entries recalls the facts or can only verify the entries as a true record made by him at or soon after the transaction to which it relates. (29 Am. Jur. 2d, § 877, p. 977.)

The elements of "past recollection recorded" are: (1) The past recollection must have been written down; (2) the recollection must have been fairly fresh when recorded; (3) the recollection must have correctly represented the maker's knowledge at the time of the making; (4) the witness must verify that the record accurately

represented his knowledge at the time of the making; and (5) the original must be submitted, if available. (Wigmore on Evidence [3rd ed.] §§ 744 to 749, inclusive.)

Kansas cases have recognized the foregoing rule. In *Garden City v. Heller*, 61 Kan. 767, 60 Pac. 1060, the agents of a tree planting contractor were allowed to testify that in their capacities they planted a certain number of trees for the city. The agents had no independent recollection but did testify that the notes used by them were correct at the time they were made, and the notes were introduced into evidence. In the opinion the court said:

". . . The general rule is that, if a witness made the entries and knew at the time that they were correct, the memoranda may be received in evidence in connection with the testimony of the witness. (*Solomon Rld. Co. v. Jones*, 34 Kan. 443, 8 Pac. 730; *Wright v. Wright*, 58 id. 525, 50 Pac. 444; *Insurance Companies v. Weides*, 81 U. S. 375, 19 L. Ed. 810; *Acklen's Executor v. Hickman*, 63 Ala. 494). The rule is well stated in Jones on Evidence, section 886, as follows:

" 'It has frequently been held that another rule prevails when the witness, after examining the memorandum, cannot testify to an existing knowledge of the fact, independently of the memorandum, but can testify that, at or about the time the writing was made, he knew of its contents and of their truth or accuracy. In such cases, both the testimony of the witness and the contents of the memoranda are held admissible. "The two are the equivalent of a present positive statement of the witness, affirming the truth of the contents of the memorandum." ' (2 Rice, Ev. 748; 1 Thomp. Trials, 365.)" (pp. 771, 772.)

Subsequent cases adhering to the foregoing rule are *Supply Co. v. Case*, 116 Kan. 520, 227 Pac. 257; *McElhaney v. Rouse*, 197 Kan. 136, 415 P. 2d 241, and cases cited therein.

The probative value of an exhibit such as plaintiff's Exhibit 4A, together with the witness' testimony, is a matter for the jury's consideration. Most of the argument made by the appellant relates to the probative value of the exhibit, which was for the jury to determine.

The appellant contends the trial court committed material error in failing to give her requested instructions Nos. 4, 6, 7 and 15.

Requested instructions Nos. 4 and 6 pertain to the burden of proof.

The trial court instructed the jury generally as to the burden of proof and further defined the terms. It then instructed the jury as follows:

"You are instructed that your first duty as jurors in this case is to determine from the evidence how much money if any, was in the safety deposit boxes at

the First and Fourth National Banks on May 23rd, and May 24th, 1963, respectively.

"You will then determine from the evidence whether or not the defendant did on said dates remove any moneys from said safe deposit boxes that belonged to and was the property of either the plaintiff or the estate of Grace Mathis, thereby converting the same to her own use. If you should fail to find by a preponderance of the evidence that the defendant did remove any such moneys belonging to either the plaintiff or the estate of Grace Mathis, deceased, you will then return a verdict in favor of the defendant and against the plaintiff.

"However, in the event that you do find by a preponderance of the evidence that the defendant did remove moneys belonging to either the plaintiff or the estate of Grace Mathis, deceased, from said deposit boxes or either of them, you will then proceed to determine how much money she removed and converted, and how much of such moneys you find removed belonged to plaintiff and how much belonged to the estate of Grace Mathis, deceased. In that event you will return a verdict in favor of the plaintiff for such amounts as you find the defendant removed and converted that belonged to plaintiff as an individual, and you will return a verdict in favor of plaintiff as special administrator of the estate of Grace Mathis, deceased, for such amounts as you find the defendant removed and converted that belonged to the estate of Grace Mathis, deceased." (Court's instruction No. 6.)

No objection was made by the appellant to the foregoing instruction and it is not challenged on appeal.

The appellant by requested instruction No. 6 sought to have the court instruct the jury "that if the plaintiff does nothing more than prove that the defendant could have converted the personal property in question, then the plaintiff has not met the burden of proving the defendant was the converter."

The trial court in giving its instructions on the burden of proof, and in defining "preponderance, or greater weight of the evidence" covered in substance the appellant's requested instruction No. 6.

By requested instruction No. 6 the appellant contends the court should have directed that the proof of a mere theory is not enough to sustain the burden of proof (citing *Lukens v. Kellogg,* 127 Kan. 568, 274 Pac. 225) because Loren Mathis never testified, nor did he ever claim that he saw the defendant actually remove any money from the safety deposit boxes. While it may be conceded the evidence does not disclose that Loren Mathis saw the defendant remove the money from the safety deposit boxes, the evidence goes far beyond a mere theory. The evidence substantiates the plaintiff's theory with facts. The totality of the circumstances surrounding the appellant's entry into the safety deposit boxes, and the ap-

pellant's admissions to her son, which are corroborated, relative to funds taken from the two safety deposit boxes, are most damaging, and the trial court was well within its province to deny requested instruction No. 6. The appellant's requested instruction No. 7 reads:

"You are instructed that if the plaintiff's testimony is incredible, inherently improbable, and irreconcilable with physical facts, common observation and experience, it must be disregarded even though it is uncontradicted."

The appellant relies upon *Rosenberg v. Baum*, 153 F. 2d 10 (10th Cir. 1946). Analysis of the *Rosenberg* decision does not indicate that we are here confronted with a situation which is fantastic in nature. The evidence in this case as to whether it was possible for Loren and Grace to have $64,801 in the two safety deposit boxes, in addition to other assets, was largely a matter to be determined from the evidence on the basis of its credibility or probative value, and the trial court properly instructed the jury in this regard. We cannot say the appellant was prejudiced by the failure of the trial court to give her requested instruction No. 7. On the basis of the whole record presented there was sufficient evidence, if believed by a jury, to support the jury's findings as indicated by its answers to the special questions. Instruction No. 15 requested by the appellant reads:

"You are instructed that if you find that the defendant, Ruth Stricklind, converted any money belonging to either plaintiff, but you are unable to determine how much money belonged to each plaintiff, then you must find for the defendant."

It is the appellant's contention that the plaintiff in a conversion action must prove title or the right to possession. It is argued the jury could not identify which money was converted from Loren Mathis and which was converted from the estate of Grace Mathis.

The jury by its special verdict found that the appellant had converted $64,801 *which belonged to Loren Mathis and Grace Mathis on December 26, 1962,* the date of Grace's death. The plaintiff in this action had title to the whole interest converted. In other words, the jury found the appellant had converted the total sum claimed. It does not lie in the mouth of the appellant to say what division should be made of the funds she converted as between Loren Mathis as an individual, and Loren L. Mathis, as special administrator of the estate of Grace Mathis, deceased. This was purely a function for the jury, and inasmuch as Loren Mathis has not cross-

appealed the jury verdict must stand on this point. The fact that the prayer of the petition requested a different division than the jury made by its verdict is immaterial. The prayer of a petition is not controlling. (*Snehoda v. National Bank*, 115 Kan. 836, 224 Pac. 914; *Reinhart v. Reinhart*, 148 Kan. 542, 83 P. 2d 628; and *Hultz v. Taylor*, 163 Kan. 180, 181 P. 2d 515.) Here it was superseded by the pretrial order and instruction No. 6 given by the trial court.

The trial court's instructions Nos. 5 and 6 defined conversion, and stated that "The motive or intent of one who converts the property of another is not material to the determination of whether or not there has been a conversion."

The appellant, therefore, was not entitled to requested instruction No. 15, and the fact that the jury divided the funds converted by the appellant equally between Loren Mathis and the estate of Grace Mathis, deceased, can give the appellant no comfort in her defense against the claim.

Other specific points raised by the appellant in her brief have heretofore been answered in the foregoing opinion.

The judgment of the lower court is affirmed.