(874 P.2d 1208)

No. 69,916

STATE OF KANSAS, *Appellee*, v. DANNY LEE KELLY, *Appellant*.

Opinion filed May 27, 1994.

*Jeffrey L. Shaw*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Christine E. Kenney*, assistant district attorney, *Gerald E. Wells*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before BRISCOE, C.J., GERNON, J., and STEPHEN D. HILL, District Judge, assigned.

BRISCOE, C.J.: Danny Lee Kelly appeals his jury convictions of three counts of burglary (K.S.A. 1991 Supp. 21-3715, class D

felony), one count of felony theft (K.S.A. 21-3701, class E felony), two counts of misdemeanor theft (K.S.A. 21-3701, class A misdemeanor), and one count of criminal damage to property (K.S.A. 1991 Supp. 21-3720[1][a], class A misdemeanor). He also appeals the sentences imposed.

The charges against Kelly arose out of three separate burglaries occurring in late December 1991 and early January 1992. Only one of those incidents is relevant for purposes of this appeal. The complaint alleged that Kelly burglarized a Lawrence residence on January 8, 1992. Kelly was also charged with misdemeanor theft in connection with that burglary. The case was tried on November 4 and 5, 1992.

The victim testified that he returned to his Elm Street residence in north Lawrence around 9:00 p.m. on January 8 and discovered evidence of a burglary. Apparently the intruders knocked out a window in the back door, unlocked the door, and entered the residence. The victim testified that wedding rings, gold necklaces, and other jewelry were taken, as well as other items.

Donald Barber, an acquaintance of Kelly, testified that he, Kelly, and Kirk Collins were in Lawrence on January 8. He claimed that he and Kelly burglarized the house and were interrupted when the owners of the residence arrived. Kelly and Barber split up and fled on foot, eventually meeting at a nightclub near the residence. Barber testified he gave a ring to one of the dancers at the nightclub.

Collins testified that Kelly and Barber got out of the car at Elm Street and Collins drove to the river to wait for them. When they did not show up, he drove around looking for them and discovered Kelly walking on the road. Collins and Kelly then went to the nightclub where Barber was waiting. Collins testified that Barber and Kelly told him they were in a house on Elm Street and that the owners arrived, causing them to run out the back door.

Kelly testified that he was with Collins and Barber on January 8, but was not involved in the burglary. He testified that Barber suggested burglarizing a house on Elm Street, but that Collins and Barber committed the crime after leaving him with the car at the river. He stated Collins returned and they met Barber at

the nightclub. Kelly testified he did give a necklace to an employee at the nightclub that night, but it was his own jewelry and was not stolen.

Donna Hudson, an employee at the nightclub, testified that Kelly and Barber came into the nightclub on the night of January 8. When they arrived, they were hot and sweaty and not dressed appropriately for the cold weather as they were not wearing jackets. Kelly and Barber immediately started handing out jewelry. They appeared nervous when a police officer entered the nightclub. Kelly asked Hudson if she could help him get to Emporia. Kelly indicated he needed to get away from the police because he and Barber had just "robbed" a house.

When asked at trial if she recalled any specific statements by Kelly or Barber, Hudson could not remember. She said one of the men was scared about being caught and about his wife learning of the incident. The prosecutor asked if it would refresh her memory to look at a police report prepared by an officer who took her statement on January 9, and she indicated it would. Defense counsel objected, claiming it was improper to allow Hudson to refresh her memory with a report she had not prepared. The objection was overruled. The witness read the report and proceeded to answer the prosecutor's questions. Hudson testified that Kelly told her he could steal more jewelry for her. She also heard him say he was teaching Barber "the ropes of how to burglarize everybody else's house, too, like he did." On cross-examination, Hudson testified that Kelly gave her a piece of jewelry from around his neck and that Barber gave her a ring, earrings, and other jewelry.

## I. Recollection Refreshed.

Kelly contends the trial court erred in allowing the prosecution to refresh the memory of one of the State's witnesses, Donna Hudson, by using a police report containing statements that the witness made to police shortly after the crimes occurred.

It is within the trial court's discretion to determine whether memoranda or other items may be used to refresh a witness' recollection. The exercise of that discretion will not be disturbed on appeal absent a showing of an abuse of discretion. See *State v. Wright*, 4 Kan. App. 2d 196, 200-01, 603 P.2d 1034 (1979),

*rev. denied* 227 Kan. 928 (1980). The general rule regarding the use of memoranda to refresh the memory of a witness who is testifying was stated long ago by our Supreme Court in *McNeely v. Duff*, 50 Kan. 488, Syl. ¶ 1, 31 Pac. 1061 (1893):

"A witness may refresh his recollection by reference to any memoranda relating to the subject-matter, to which his attention is directed on the stand, whether the memoranda are in such form as to be competent as independent evidence or not, and then testify, providing he then has any independent recollection of such subject-matter."

This holding was later approved in *Carter v. Carter*, 187 Kan. 74, Syl. ¶ 2, 353 P.2d 499 (1960).

Kelly argues it is improper to allow a witness to refresh his or her memory using any memoranda which are not prepared by the witness or at the witness' direction, citing *State v. Collins*, 204 Kan. 55, 59, 460 P.2d 573 (1969): "[A] witness may refresh his recollection by reference to a writing or memorandum made by him shortly after the occurrence of the fact to which he relates and testify to the fact provided he then has an independent recollection of the subject matter." Kelly claims the only recognized exception to the rule is for law enforcement officers who may refer to police reports prepared by other officers in order to refresh their memories. See *State v. Kimmel*, 202 Kan. 303, 309, 448 P.2d 19 (1968).

In the cases cited by Kelly, the court simply applied the general rule to the facts presented. The cases cited in no way limit by author or by the author's occupation what writing or memoranda may be used to refresh a witness' recollection. Further, the cases cited by Kelly do not limit the writings which may be used to refresh a witness' recollection to only those writings prepared by the witness.

There are cases where the trial court has allowed a witness to refresh his or her memory by review of memoranda prepared by another, and no error has been found. See *Bodnar v. Jackson*, 205 Kan. 469, 472, 470 P.2d 726 (1970); *McNeely*, 50 Kan. at 492-93. These cases are in accord with the general rule that any writing or thing may be used to refresh a witness' present recollection of past events without restriction as to authorship, guaranty of correctness, or time of making, provided the witness testifies from an independent recollection of the subject matter.

1 McCormick on Evidence § 9 (4th ed. 1992); 3 Wigmore on Evidence §§ 758-759 (1970). Fed. R. Evid. 612 adopts this view, although not by direct statement. See, *e.g.*, *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978) ("But, the law is clear that recollection can be refreshed from documents made by persons other than the witness.").

Whether the trial court should allow a witness to review a document to refresh his or her memory does not depend solely upon who created the document. So long as the witness testifies from an independent recollection of the events at issue after the document is used to refresh the witness' memory, it does not matter who created the document. This is because it is the witness' *testimony*, not the *document*, which is the evidence at issue. The court's allowance of counsel to use memoranda to refresh a witness' present recollection of past events differs from the court's admission of a document into evidence as past recollection recorded. Prior to the court permitting admission of the document itself into evidence as past recollection recorded, the court must first find that the witness cannot recall the contents of the document but can attest that the document accurately reflects his or her recollection at the time the document was created. See *Mathis v. Stricklind*, 201 Kan. 655, Syl. ¶ 3, 443 P.2d 673 (1968).

Kelly argues it is unduly suggestive to use a document prepared by someone other than the witness for purposes of refreshing recollection. He argues the use of a document prepared by another could lead to false testimony. Kelly argues use of a police report to refresh the recollection of a witness who is not a police officer is particularly problematic because the report would have been written to assist law enforcement and the witness may feel compelled to adopt the police report's version of the events. While these concerns are valid, there are two established safeguards against false testimony. First, when counsel uses a document to refresh a witness' recollection and the witness then testifies, the witness is always subject to challenge by opposing counsel through objection or cross-examination if, in fact, the witness' memory is not refreshed and the witness is simply testifying from the document. Second, opposing counsel can inspect the document and use it on cross-examination of the witness. While the proponent of refreshed testimony cannot submit the

refreshing document to the jury, the general view is that opposing counsel, with the approval of the trial court, can submit the document to the jury for examination. 1 McCormick § 9.

In this case, the police report was not read or submitted to the jury. Further, the record indicates the witness' testimony was based upon her independent recollection of the events. The testimony she gave after reading the report corroborated other witnesses' accounts of the events, including that of Kelly, specifically with regard to the necklace Kelly gave the witness that night. Kelly points to discrepancies between the witness' testimony and the police report and argues the report should not have been used because it was inaccurate. If the testimony differed from the report, this variance supports the conclusion that the witness was testifying from an independent recollection of events and was not blindly relying upon the report for the content of her testimony.

## II. Alleged Sentence Disparity.

Kelly also contends his sentence is disproportionately longer than the sentence of his codefendant, Donald Barber. He argues the trial court abused its discretion by failing to state its reasons for giving Kelly a disproportionately longer sentence. He argues he and Barber are similarly situated defendants who should receive similar sentences.

Barber pleaded guilty to one count of conspiracy to commit burglary (K.S.A. 1991 Supp. 21-3715; K.S.A. 21-3302, class E felony) in connection with one of the burglaries involved in the present case. He received a sentence of one to five years but was granted probation. In exchange for his plea, the State dropped the balance of the charges against Barber. Kelly received consecutive 1- to 10-year sentences for the three burglary counts, a 1- to 5-year sentence for the felony theft count, and 1 year in jail for both misdemeanor theft counts. The theft sentences were ordered to run concurrently, and the result was a controlling sentence of 3 to 30 years.

In support of his argument, Kelly relies on *State v. Bailey,* 251 Kan. 527, 834 P.2d 1353 (1992). In *Bailey,* two defendants were convicted of the same crimes and received the same sentences. However, Bailey's sentences were consecutive and his

codefendant's sentences were concurrent. Bailey had three prior adult convictions and his codefendant had two prior adult convictions and an outstanding warrant for aggravated robbery. The Supreme Court noted the trial court was not bound to sentence Bailey to the same or a lesser sentence than that of his codefendant but held, under the circumstances, that the trial court had to consider the codefendant's sentence before imposing Bailey's sentence and provide reasons for a longer sentence.

In *State v. Smith*, 254 Kan. 144, 864 P.2d 709 (1993), the Supreme Court considered a similar claim. Smith was convicted by jury of two counts of attempted second-degree murder and one count of kidnapping, and received a controlling sentence of 20 years. A codefendant pleaded no contest to one count of aggravated battery and received a sentence of 3 to 10 years. Another codefendant pleaded no contest to attempted first-degree murder and aggravated battery and received a controlling sentence of 8 to 20 years. Smith argued that, because the evidence showed she was less culpable than her codefendants, it was unfair that she received a longer controlling sentence. The court found that, because of the differences in the crimes and the trial court's expressed belief that Smith was in fact the driving force behind the initiation and continuation of the offense, the requirement in *Bailey* was satisfied. The court held the disparity in sentences was not the result of partiality, prejudice, oppression, or corrupt motive.

"Generally, '[an appellate court] will not disturb a sentence imposed by a trial court on the ground it is excessive, provided it is within the statutory limits and within the realm of the trial court's discretion and not the result of partiality, prejudice, oppression, or corrupt motive.' [Citation omitted.] Disparity in the sentences of the codefendants does not amount to abuse of discretion 'where the trial court considers the individual characteristics of the defendant being sentenced, the harm caused by that defendant, and the prior criminal conduct of that defendant.' [Citation omitted.]" *Smith*, 254 Kan. at 155.

While the crime for which Barber was convicted arose out of one of the burglaries for which Kelly was ultimately found guilty, these defendants are not similarly situated. Kelly was convicted of three D felonies, one E felony, and two misdemeanors. At the time of sentencing, Kelly had three prior adult adjudications

for burglary. Further, he committed the present crimes while on parole. In contrast, Barber pleaded guilty to one E felony and received a sentence of one to five years. That sentence, like the sentences imposed for Kelly's burglary convictions, was the minimum minimum and the maximum maximum. The statutory presumption of probation applied to Barber's conviction, and the court granted probation. It is unclear what Barber's criminal history was at the time he was sentenced. He testified at Kelly's trial that he had one other burglary conviction.

At Kelly's sentencing, Kelly's attorney directed the trial court's attention to the fact that Barber received probation for his involvement in the crime. The court meticulously applied K.S.A. 21-4601 and the sentencing factors of K.S.A. 21-4606 to support the sentences imposed. The court also found that, due to Kelly's criminal history, the presumption of probation did not apply. The court declined to grant assignment to community corrections, finding Kelly's criminal history was an aggravating factor under K.S.A. 1991 Supp. 21-4606b.

The court's basis for sentencing Kelly more severely than Barber is clear from the record. Kelly was convicted of more and greater crimes, had a worse criminal history, and was on parole when he committed the present crimes. Kelly has failed to establish that his sentences are the result of partiality, prejudice, oppression, or corrupt motive.

Affirmed.