NOT DESIGNATED FOR PUBLICATION

No. 115,619

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN MANUEL RODRIGUEZ-GUERRERO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed February 16, 2018. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and ATCHESON, JJ.

PER CURIAM: A jury sitting in Johnson County District Court found Defendant Juan Manuel Rodriguez-Guerrero guilty of two counts aggravated indecent liberties with a child and acquitted him of one count of rape based on recurrent sexual abuse of his stepdaughter Y.C., who was 12 years old when the crimes occurred. On appeal, Rodriguez-Guerrero challenges a series of evidentiary rulings by the district court that he says deprived him of a fair hearing. Although there were some problems with those

1

decisions, they did not create reversible error. We, therefore, affirm the convictions and resulting sentences.

## FACTUAL AND PROCEDURAL INTRODUCTION

Given the issues on appeal, we need not explore in detail Y.C.'s accusations or the trial evidence. Rodriguez-Guerrero met L.G. around 2001, and they began a relationship leading to their marriage in 2010. They had a blended family that included Y.C. and M.C., L.G.'s children from an earlier relationship, and their own children V.R. and N.R. In late 2011, L.G. ordered Rodriguez-Guerrero out of the house and effectively ended their relationship. Rodriguez-Guerrero later attributed the split to his chronic abuse of alcohol. Other evidence indicated L.G. suspected he had been acting inappropriately toward Y.C.

In early 2012, Y.C. disclosed that Rodriguez-Guerrero had repeatedly sexually assaulted her the year before. Y.C. described some of the incidents to her mother and then offered fuller accounts to law enforcement officers and a social worker trained in working with child victims of sexual abuse. According to Y.C., Rodriguez-Guerrero touched her breasts, buttocks, and pubic area on multiple occasions and had sexual intercourse with her once. She explained she eventually revealed what happened because she feared she was pregnant. A medical examination and tests showed Y.C. was not pregnant.

Detective Matthew Campbell of the Olathe Police Department interrogated Rodriguez-Guerrero with a bilingual officer who acted as a translator. During the questioning, Rodriguez-Guerrero sometimes responded without the questions being translated into Spanish. Early in the interrogation, Rodriguez-Guerrero generically agreed to the truth of whatever Y.C. had told investigators, except for the accusation of sexual intercourse. Later during the questioning, he specifically admitted touching Y.C.'s

2

breasts, buttocks, and pubic area more than once. Rodriguez-Guerrero described with particularity one time when he and Y.C. had been giving the family dog a bath—an incident Y.C. had told investigators about. Otherwise, Rodriguez-Guerrero's account lacked details about when or where he had abused Y.C.

Because of the lengthy gap between the incidents and Y.C.'s disclosure of them, law enforcement investigators were unable to recover any biological or other physical evidence corroborating the sexual assaults.

The district attorney's office charged Rodriguez-Guerrero with two counts of aggravated indecent liberties with a child based on the touching of intimate parts of Y.C.'s body and one count of rape based on the act of sexual intercourse. During the three-day jury trial in September 2015, Y.C. testified, and the prosecutor called witnesses who recounted her out-of-court statements about the abuse. The prosecutor also presented Rodriguez-Guerrero's admissions to Det. Campbell. Rodriguez-Guerrero testified in his own defense. He denied any improper physical contact with Y.C. He told the jurors he falsely admitted otherwise to Det. Campbell, fearing that L.G. would have the children taken away from her if he denied the accusations.

As we have said, the jury convicted Rodriguez-Guerrero of the aggravated indecent liberties charges and found him not guilty of the rape charge. The district court later sentenced Rodriguez-Guerrero to life in prison with parole eligibility after 25 years and ordered him to pay a sizeable amount of restitution. Rodriguez-Guerrero has timely appealed.

ANALYSIS

Rodriguez-Guerrero raises four evidentiary issues on appeal and a final point based on cumulative error in the district court. We take those claims up in the order

3

Rodriguez-Guerrero has presented them, adding focused factual and procedural details as necessary.

*Defendant's Proffered Psychological Expert*

Before trial, the defense identified Dr. Robert Barnett, a clinical psychologist, as an expert witness who would testify that Rodriguez-Guerrero's overall psychological profile made him prone to falsely admitting to things he didn't do, especially in a highly stressful environment such as a police interrogation. The prosecution filed a pretrial motion challenging the admissibility of Dr. Barnett's testimony, and the district court held a hearing on the matter. See K.S.A. 2016 Supp. 60-457(b). Dr. Barnett testified at the hearing.

At the hearing, Dr. Barnett explained that he had conducted a forensic examination of and interview with Rodriguez-Guerrero and had reviewed various records in reaching his expert opinions. Dr. Barnett testified he was uncertain whether he had watched the entire videotape of the police interrogation of Rodriguez-Guerrero. The records Dr. Barnett did review included a hospital admission in Mexico for Rodriguez-Guerrero that showed he had bacterial meningitis when he was 10 years old.

Dr. Barnett concluded Rodriguez-Guerrero was of limited intellectual capacity and, as a result, it was possible he had been induced to give a false confession. Dr. Barnett characterized Rodriguez-Guerrero's cognitive deficit as an organic brain dysfunction that might be the result of meningitis, long-term alcohol abuse, or something else entirely. Dr. Barnett offered no clinical opinion on the actual cause of the dysfunction.

The prosecutor challenged Dr. Barnett's use of the Mexican medical records, since they were inadmissible hearsay. The records were neither authenticated nor otherwise

4

admissible as evidence. The lawyers and the district court analyzed the challenge under an outdated version of the Kansas Rules of Evidence that precluded experts from relying on inadmissible materials in forming their opinions. They failed to realize the Legislature had amended the rules as of July 1, 2014, to allow experts to consider otherwise inadmissible information in forming their opinions "[i]f of a type reasonably relied upon" by professionals in that "particular field." K.S.A. 2016 Supp. 60-458. The amendment parallels the approach to expert testimony in Federal Rule of Evidence 703 and in K.S.A. 2016 Supp. 59-29a06(c), which governs expert testimony in commitment proceedings for sexually violent predators.

During the hearing, nobody asked Dr. Barnett if psychologists would commonly rely on medical records in making a clinical or forensic evaluation of a person's mental health or capacity. The question presumably went unasked because the participants did not realize the answer would have guided Dr. Barnett's reliance on the medical records in forming his opinion about Rodriguez-Guerrero's mental capacity. The district court applied the outdated categorical prohibition on an expert's use of inadmissible evidence and ruled Dr. Barnett could not rely on the Mexican medical records.

Although Dr. Barnett should have been allowed to use the medical records in forming his expert opinion if they otherwise satisfied K.S.A. 2016 Supp. 60-458, the records would not have been admissible as substantive evidence during the trial for that reason. They remained inadmissible hearsay without further authentication, which Dr. Barnett could not provide. The State would have been free to cross-examine Dr. Barnett at trial about the medical records and his reliance on them as a means of attacking the reliability of his opinions. See *In re Care & Treatment of Quary*, 50 Kan. App. 2d 296, 301-03, 324 P.3d 331 (2014) (construing the legally identical provision on expert witnesses in K.S.A. 2013 Supp. 59-29a06[c]).

Here, the district court erred by applying an incorrect legal standard to preclude Dr. Barnett from relying on the Mexican medical records in forming his expert opinions about Rodriguez-Guerrero. Arguably, however, the district court reached the correct conclusion because Rodriguez-Guerrero never established that the medical records were of a type that Dr. Barnett or other psychologists would commonly rely upon in rendering a clinical or forensic evaluation.

More broadly, we also find the error to be harmless under the circumstances. The district court did *not* bar Dr. Barnett from testifying at trial. It held only that he could not use the medical records in forming his opinions. At the hearing, Dr. Barnett fairly clearly established that the medical records did not have much bearing on his forensic evaluation and his ultimate conclusion that Rodriguez-Guerrero was of limited intellectual capacity and, thus, possibly susceptible to falsely confessing in response to persuasive interrogation techniques. The records simply suggested a possible physiological cause, among others, for Rodriguez-Guerrero's limitation. Notwithstanding the relatively narrow ruling from the district court, Rodriguez-Guerrero—for whatever reason—chose not to call Dr. Barnett as a witness during the trial. The record is bereft of any reason for that tactical decision. We may surmise that Rodriguez-Guerrero concluded, based on the hearing transcript, that Dr. Barnett would not necessarily offer a compelling narrative for the jurors' consideration. And, of course, Rodriguez-Guerrero testified at trial that he falsely incriminated himself to Det. Campbell to avert government action to take away L.G.'s children and not because he was tricked or confused during the interrogation. We also mention that Rodriguez-Guerrero unsuccessfully attempted to introduce the Mexican medical records as an exhibit at trial through his own testimony. We assume Rodriguez-Guerrero considered something in the records to be helpful to his defense independent of Dr. Barnett's expert opinions. The district court correctly ruled that Rodriguez-Guerrero could not himself lay a sufficient foundation to admit the records as evidence.

6

Rodriguez-Guerrero has failed to present an error affecting his right to a fair trial or otherwise influencing the outcome of the trial.

*Defendant's Challenge to Social Worker's Testimony*

Rodriguez-Guerrero filed a pretrial motion to preclude Jennifer Coughlin, the social worker who interviewed Y.C. after she disclosed she had been sexually assaulted, from testifying about common characteristics of young victims of such abuse and the manner in which they reveal what had been done to them. The district court ultimately ruled that the State intended to present Coughlin at trial as a nonexpert witness for the primary purpose of laying an evidentiary foundation for the videotaped interview she conducted with Y.C. The district court essentially determined the motion to be moot, since Coughlin would not be offering expert opinion testimony.

At trial, the prosecutor questioned Coughlin at length about her education, training, and experience in interviewing child victims of sexual abuse—precisely the approach a lawyer commonly would take to qualify an expert witness. Establishing Coughlin's credentials in that way was superfluous to the evidentiary foundation for admitting the videotape. The foundation required only that Coughlin establish she interviewed Y.C., she had reviewed the videotape, and the videotape accurately depicted the interview. So the extended examination of Coughlin about her background may have been an unnecessary embellishment and objectionable for that reason. Rodriguez-Guerrero did not object.

On appeal, Rodriguez-Guerrero contends Coughlin impermissibly testified at trial that older children typically are not prone to affirming false suggestions they have been sexually abused and commonly don't falsely report those incidents or recount them in structured interviews such as the one she conducted with Y.C. The testimony went beyond what a lay witness properly could say in front of a jury and amounted to an expert

7

opinion. The testimony, therefore, arguably exceeded what the district court intended with its pretrial ruling.

The problem for Rodriguez-Guerrero on appeal—and it is a fatal one—lies in how the topic of unduly suggestive interviews of children came up with Coughlin during the trial. Rodriguez-Guerrero's lawyer first questioned Coughlin about it on cross-examination. The prosecutor then followed up with some related questions to Coughlin on redirect examination. Having proverbially opened the door to the subject, Rodriguez-Guerrero cannot now complain about Coughlin's testimony on the topic. See *State v. Drayton*, 285 Kan. 689, 699-700, 175 P.3d 861 (2008); *State v. Bright*, 218 Kan. 476, 478-79, 543 P.2d 928 (1975). Although the "opened door" rule is not without limitation, it plainly applies here since Rodriguez-Guerrero originally sought to curtail Coughlin's testimony as an expert and then invited an expert opinion from her during trial. We find no error on this point.

*Defendant's Objection to Cumulative Evidence*

At trial, Rodriguez-Guerrero objected to the prosecution playing the videotaped interview between Coughlin and Y.C. for the jurors on the grounds it was cumulative evidence and otherwise inadmissible. Y.C. testified at trial and was subject to cross-examination, so the videotape could not have been excluded as hearsay or as a violation of Rodriguez-Guerrero's right to confront the witnesses against him protected in the Sixth Amendment to the United States Constitution. To that extent, the videotape was admissible, and Coughlin established its accuracy as a record of the interview.

We recognize potential concerns in a jury trial when the State presents serial out-of-court statements from a victim or from a witness describing the charged criminal incident absent some particular need for that repetitive evidence. For example, a victim's account given shortly after the crime would be admissible to rebut a defense suggestion

that some or all of the trial testimony amounted to a recent fabrication. See *Tome v. United States*, 513 U.S. 150, 156, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995) (prior consistent statement rebuts suggestion of "recent fabrication or improper influence or motive"). Likewise, an out-of-court account, such as a signed statement, might be admitted at trial to supplant the faltering memory of a witness. See *State v. Kelly*, 19 Kan. App. 2d 625, 629, 874 P.2d 1208 (1994) (describing evidentiary use of past recollection recorded). Here, the record does not readily disclose that kind of specialized circumstance.

But Rodriguez-Guerrero did not object during the trial to the admission of roughly five other out-of-court accounts from Y.C. of the sexual abuse. Under the circumstances, we find any error in the admission of the videotaped interview as yet another account to be harmless. In this case, both Y.C. and Rodriguez-Guerrero testified at trial. The jurors would have given primacy to that in-court credibility contest, affording them the opportunity to observe both the accuser and the accused as they testified in person and bore the rigors of cross-examination. See *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014); *State v. Hinchsliff*, No. 103,608, 2011 WL 4031502, at *10 (Kan. App. 2011) (unpublished opinion). Moreover, the veracity of Rodriguez-Guerrero's in-court denial of wrongdoing otherwise suffered markedly from his contradictory and highly inculpatory admissions to Det. Campbell that were properly presented for the jurors' consideration.

We find any possible error in the admission of the videotaped interview of Y.C. to be harmless beyond any reasonable doubt.

*Denial of Competency Hearing*

Rodriguez-Guerrero filed a pretrial motion requesting that the district court conduct a hearing to determine if Y.C. satisfied the statutory requirements of competency

9

to testify as a witness, as provided in K.S.A. 60-417. Under K.S.A. 60-417, persons may not be witnesses if they are unable to make themselves understood by the fact-finder "either directly or through interpretation" or if they are "incapable of understanding the duty . . . to tell the truth." A district court may make a determination of a witness' competency to testify at a hearing outside the presence of the jury. K.S.A. 60-408.

Here, Rodriguez-Guerrero offered no demonstrable grounds to question Y.C.'s ability to communicate or to understand an oath or affirmation to tell the truth. He proffered without evidentiary support that Y.C. was in counseling and had accused another family member of sexually abusing her. Even if Rodriguez-Guerrero had offered evidence to back up his assertions, they would not have rendered Y.C. incompetent to testify within the meaning of K.S.A. 60-417.

In short, Rodriguez-Guerrero's motion lacked any factual basis and was, therefore, without merit. The district court did not err in summarily denying it without requiring the State to produce Y.C. for a pretrial hearing.

Assuming there were some error in the district court's handling of the motion, which we doubt, Rodriguez-Guerrero waived the issue by not renewing his competency argument at trial when Y.C. first took the stand to testify. The erroneous admission of evidence at trial, including witness testimony, cannot be raised as a ground for setting aside a verdict absent a contemporaneous objection to that evidence. K.S.A. 60-404. Rodriguez-Guerrero made no contemporaneous trial objection to Y.C.'s testimony based on her purported lack of competence. The point has not been preserved for review on appeal. See *State v. Potts*, 304 Kan. 687, 699-701, 374 P.3d 639 (2016); *State v. Gonzales*, No. 114,222, 2017 WL 839513, at *1 (Kan. App. 2017) (unpublished opinion) ("In recent years, the Kansas Supreme Court has implacably and strictly enforced the contemporaneous objection rule."), *rev. denied* 306 Kan. 1323 (2017).

*Cumulative Error*

Finally, Rodriguez-Guerrero argues that cumulative error deprived him of a fair trial and requires reversal of his convictions. Appellate courts will weigh the collective impact of trial errors and may grant relief if the overall result deprives the defendant of a fair hearing even though the errors considered individually might be considered harmless. *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). The overall effect of the errors is measured against the trial record as a whole. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). Unpreserved trial error cannot be resurrected and weighed in assessing cumulative prejudice. See, e.g., *State v. Leaper*, 291 Kan. 89, 106-07, 238 P.3d 266 (2010); *State v. Knight*, No. 105,092, 2012 WL 2325849, at *7 (Kan. App. 2012) (unpublished opinion).

Here, the only possible error preserved for review—and we underscore *possible*—was the cumulative admission of the videotaped interview of Y.C. A single error otherwise found to be harmless cannot logically or legally support a claim for prejudicial cumulative error, since there is nothing to cumulate. See *State v. Foster*, 290 Kan. 696, 726, 233 P.3d 265 (2010) ("A single error does not constitute cumulative error[, and] . . . the doctrine is inapplicable.").

Affirmed.