NOT DESIGNATED FOR PUBLICATION

No. 118,420

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEVIN WILLIAM MCNELLIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed July 26, 2019. Affirmed.

*Kevin W. McNellis*, appellant pro se.

*Kendra Lewison*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN and POWELL, JJ.

PER CURIAM: Kevin McNellis, who represents himself on appeal, appeals his conviction and sentence for battery against his wife, Kara. We will summarize the rulings we are making on the many issues McNellis has raised before explaining our decision in more detail. In McNellis' brief on appeal, he lists 19 separate issues. We have reorganized them a bit—now showing 11 issues—but have addressed the points he raised.

First, McNellis complains about the record on appeal and his access to it. He complains that the district court didn't properly handle motions he filed to add items to the appellate record and that the district court didn't send him a paper copy of its records.

But some items he wanted in the record couldn't properly be included—his correspondence with his attorneys may relate to an ineffective-assistance-of-counsel claim that he could raise in a later habeas corpus proceeding but no habeas claim is now before us. And we cannot identify any other document that hasn't been included in the record that might reasonably affect resolution of the issues he has raised on appeal. As for the availability to him of a paper copy of the record, the district court clerk made the record available to him electronically at the courthouse. McNellis suggests that because he lives hundreds of miles away, the clerk's efforts here are not ideal. But McNellis was also represented for a time by an attorney who had the full record, and McNellis acknowledges that his former attorney's assistant sent McNellis "the last known record on appeal dated November 2017, with all items on record attached accordingly with PDF files, or similar . . . ." Since the full record at that time was provided to McNellis by his former attorney and the clerk made the full trial-court record available (even if only at the clerk's office), we find no reversible error here in the handling of the record.

Second, McNellis addresses alleged errors involving the withdrawal of his trial attorney. But McNellis doesn't show how this had any impact on the trial. McNellis represented himself at trial, and he hasn't suggested he provided inadequate representation. With no connection between this claim and the trial outcome, McNellis hasn't shown a trial error involving his prior attorney.

Third, McNellis raises a series of issues related to the State's grant of immunity to Kara at the preliminary hearing. But he once again doesn't show how this affected his trial and he didn't object at the preliminary hearing to the State's grant of immunity to Kara. Because he didn't raise the issue in the district court, he cannot raise it on appeal.

Fourth, McNellis claims that the court erred by allowing officer Matt Pfrang to refresh his memory by looking at his police report—which McNellis calls a script—while testifying at the preliminary hearing. But a witness who has an independent recollection

2

of the subject matter can use a document to refresh memory, so the court didn't err in allowing the officer to do so.

Fifth, McNellis raises arguments that the attorneys who represented him were ineffective. But we usually will not consider an allegation of ineffective assistance of counsel for the first time on appeal because the factual basis for the claims hasn't been developed in the trial court. We see no reason to deviate from that rule here.

Sixth, McNellis claims that the district court erred by not letting him call Kara McNellis to testify at trial by electronic means while she remained in Illinois. Although Kansas law allows for witnesses to testify from another place under special circumstances, McNellis hasn't shown that the compelling circumstances required to allow such testimony existed. So he has not shown that the district court abused its discretion by denying the request.

Seventh, McNellis argues that the district court erred by not removing potential jurors who had "self-admitted conflict[s] of interest." But McNellis didn't raise this issue in the district court and doesn't cite any exception to the general rule that issues must be raised first in the trial court to be considered on appeal. We therefore decline to take up this claim of error.

Eighth, McNellis claims that the district court failed to keep jurors and the prosecutor from using the same public restroom during the trial. But jurors are instructed at the start of a trial not to talk about the case to anyone or let anyone talk to them about it. We presume that the jurors followed that instruction and find no error in letting jurors use the public restroom in the hallway of a courthouse.

Ninth, McNellis claims the prosecutor erred by presenting evidence from officers and hotel employees about what Kara told them at the hotel. But McNellis didn't object to

the admission of this evidence at trial, and a trial objection is needed to preserve an evidentiary issue for appeal.

Tenth, McNellis says there wasn't sufficient evidence to support his conviction. But the State had to prove only that McNellis hit Kara at least one time that night in anger. Several witnesses at trial who testified that McNellis injured Kara, describing blood dripping from her ear, red marks on her neck, and Kara's statements about her injuries. There was more than sufficient evidence to supports McNellis' conviction for battery.

Last, McNellis claims the district court erred by issuing two arrest warrants while he has been on probation. He objects that the first warrant was issued before he was given a chance to "appear and defend." But a warrant is issued on probable cause, not after a contested trial. The court followed the proper procedure, and McNellis has the right to defend against the allegation after arrest. McNellis argues that the second bench warrant apparently was issued against him in retaliation for proper conduct. But he has not shown that he raised that issue in the district court or any reason why it may be raised for the first time on appeal.

With that overview, we will go on to review the case and issues on appeal more fully.

FACTUAL AND PROCEDURAL BACKGROUND

McNellis, who represents himself on appeal, appeals his conviction for battery against his wife, Kara.

In May 2015, an employee at the Bluemont Hotel in Manhattan called 911 after a guest—Kara—reported that "her husband assaulted her and hit her multiple times." When

4

officers arrived at the hotel room where the incident had occurred, officers found Kara being treated by emergency medical personnel.

We start with the facts set out in Kara's written statement to the police. She said that she and McNellis had driven from their home in Chicago to Manhattan to visit family. She said they argued for the "majority of [the] car ride."

After the couple arrived at the Bluemont Hotel, Kara checked into the hotel and McNellis went to a bar. He returned to the hotel about an hour later, but the two kept arguing. McNellis left again and "went out drinking for the rest of the evening." He returned to the hotel room around 11 p.m.

Kara said that she and McNellis were in separate beds when "he became agitated." She then said that McNellis started to restrain her in her bed, "held his hands around [her] neck and was squeezing, [and] repeatedly put [her] in a chokehold position and was twisting [her] neck to the point of pain." Then Kara said he hit her three to four times on the left side of her face.

Kara said that at that point she "was able to get away, off [the] bed into the corner of the room[, but] he restrained [her] again around [her] neck and struck [her] 2-3 more times and spit in [her] face." Kara described "screaming throughout this ordeal." Finally, McNellis left the hotel room with Kara's phone and car keys.

One officer who responded to the incident, Michael Wagenblast, interviewed Kara, and that interview was recorded on his body camera. He also took photos of the injuries Kara sustained, including a cut ear, bruised eyelid, and marks on her neck.

According to an email hotel employee Ashley Arth wrote to her supervisors, Kara called the front desk around 11:35 p.m. "and said that her husband had physically abused

5

her by hitting her in the head and choking her." The email also said Kara "thought she needed to be check[ed] out because at one point in time she blacked out during the abuse." Arth said she called the police as soon as she got off the phone with Kara.

The State charged McNellis with one count of aggravated battery. Before trial, though, the State amended the charge to simple battery, a misdemeanor. The elements of battery charged here were (1) physical contact (2) done in a rude, angry, or insulting manner. See K.S.A. 2018 Supp. 21-5413(a)(2).

McNellis was first represented by attorney Colt Knutson, who later withdrew because of "complete and irreconcilable differences" and because "[c]ommunication and dialogue between [McNellis] and counsel ha[d] ceased to exist." The district court then appointed Gary West to represent McNellis. West later withdrew, also because of "[i]rreconcilable differences." The court tried to appoint a third attorney, Brenda Jordan, to represent McNellis. McNellis rejected that appointment and, "[a]fter being fully advised, [McNellis] waive[d] his right to counsel and refuse[d] stand-by counsel."

McNellis represented himself at trial. The jury heard from Wagenblast, two hotel employees (Arth and Severance Hill), and McNellis. Kara wasn't able to come to Kansas for the trial due to a high-risk pregnancy, so the State read to the jury testimony that she had given at an earlier hearing.

The jury found McNellis guilty of battery. The district court sentenced him to 12 months of probation with an underlying term of 6 months in jail that McNellis would have to serve if he didn't successfully complete probation.

ANALYSIS

## I. *McNellis Hasn't Shown Error Regarding the Record on Appeal.*

McNellis makes two basic complaints about the record on appeal. First, he complains that the district court either refused to add items he wanted in the record or failed altogether to act on some of his requests. Second, he argues that he didn't have sufficient access to the record to work on his appeal.

We begin by considering the purpose of the record on appeal—it allows us to consider the issues properly before us on appeal. Here, we need to determine whether McNellis got a fair trial and whether evidence used against him at trial was properly admitted. But McNellis is trying to weave other issues into his appeal with broad claims of "Public Corruption riddled throughout nearly all aspects" of his case. We do not have sweeping investigatory powers over public corruption. In a criminal case that resulted in conviction, like this one, we decide whether errors require reversal of that conviction.

It appears to us that most of the records McNellis points to as not being in our record simply don't affect the issues that are properly before us. For example, McNellis wants us to see communications between him and the attorneys who represented him at different times. But there were no evidentiary hearings in the trial court about whether any of his attorneys provided inadequate representation; normally, we don't consider that issue on direct appeal unless those hearings have happened. See *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014); *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986). Instead, issues of ineffective assistance of counsel are usually first raised in a later habeas proceeding under K.S.A. 2018 Supp. 60-1507 only after the defendant's conviction is affirmed on direct appeal. If the conviction isn't affirmed, of course, there would be no need to look at the adequacy of the representation; the defendant would either get a new trial or have the charges dismissed altogether. Since McNellis'

7

communications with his attorneys weren't part of the district court's proceedings, they wouldn't properly be part of the record for this appeal. See Supreme Court Rule 3.01 (2019 Kan. S. Ct. R. 19).

McNellis also wants us to see emails with his probation officer, with the trial judge, and with the prosecutor. Once again, those weren't part of a district court hearing or filing. And McNellis doesn't provide any reasonable link between those materials—or others excluded from the record—and any of the issues properly before us. We could not identify any document not included in the record that might reasonably affect resolving those issues.

McNellis also argues that he has been wrongfully deprived of a copy of the record and is entitled to a "proper free copy for all of the needed and requested items of record with audio . . . in their full and non-redacted form."

We agree that McNellis had a right to access the appellate record. K.S.A. 22-4509 provides for that access:

> "Whenever it is determined that a transcript of all or some part of the trial or other proceeding is necessary to enable a person who is entitled to appeal, or to pursue another post-conviction remedy, to present such person's cause adequately and it is further determined that the appellant or petitioner or movant is financially unable to pay for the preparation of such transcript, the district court shall order that the transcript be supplied to the appellant or petitioner or movant by the official reporter of the district court."

But at the beginning of this appeal, McNellis was represented by an appointed attorney. In fact, that attorney filed a brief on McNellis' behalf before, at McNellis' request, our court struck that brief and allowed McNellis to file his own brief, raising many more issues.

8

As for the record, though, McNellis agrees that his former attorney's assistant sent McNellis "the last known record on appeal dated November 2017, with all items on record attached accordingly with PDF files, or similar . . . ." He also concedes that the district court clerk's office made the record available to him electronically at the Riley County Courthouse.

McNellis argues that access at the Kansas courthouse is of little value to a litigant who would have to travel 1,300 miles roundtrip to view it. From the perspective of serving litigants and the public, McNellis makes a fair point. But on the facts here, he hasn't shown a violation of due process or fundamental fairness; nor has he shown prejudice. The full appellate record as it stood in November 2017 (the record his appointed attorney used to file a brief) was provided to McNellis, and the full district court record was available to him at the courthouse. McNellis' appellate brief cites appropriately to the trial transcript, and he hasn't shown that lack of better access to the record prejudiced him in any way in preparing his 60-page brief. With no showing of prejudice, any error that took place would be considered harmless. See *State v. Salary*, 309 Kan. 479, 487, 437 P.3d 953 (2019). We therefore find no reversible error here in the handling of the record.

II. *McNellis Has Not Shown Reversible Error Regarding the Withdrawal of His Trial Counsel, Colt Knutson.*

McNellis next claims error over the withdrawal of his trial counsel, Colt Knutson. Before trial, Knutson asked the district court to let him withdraw as McNellis' attorney, citing irreconcilable differences and lack of communication with McNellis. The court granted Knutson's motion, concluding in a written order that "after being duly advised, [it found] that just cause exist[ed]" to allow Knutson to withdraw.

McNellis complains that no hearing took place. He also alleges that Knutson had conflicts of interest.

9

But this is another area in which McNellis doesn't tie his general allegations of misconduct to the trial, which caused the conviction that is now on appeal. As we have already explained, there's no claim of ineffective assistance of counsel properly before us.

And McNellis ultimately represented himself at trial. On appeal, McNellis hasn't argued that *he* did an inadequate job of representing himself at trial or that the district court failed to advise him of the risks of doing so before he made that choice. McNellis had the right to represent himself at trial, see *State v. Jones*, 290 Kan. 373, 376-77, 228 P.3d 394 (2010), and he did so. He has shown no impact on the trial from Knutson's earlier representation. McNellis therefore has not shown error on this point.

III. *McNellis Didn't Preserve for Appeal Any Complaints About the State's Grant of Immunity to His Wife.*

McNellis raises a series of issues related to the State's grant of immunity to Kara at the preliminary hearing, which provided the testimony read to the jury at trial. Most of these claims have to do with McNellis' claims that the State violated Kara's rights, not his own rights. So it's once again hard to see how these claims (such as the failure to involve a victim coordinator for Kara on the hearing record or the failure of police to give *Miranda* warnings to Kara) would in any way impact McNellis' trial. In any case, he didn't object at the preliminary hearing to the State's grant of immunity to Kara. Since McNellis didn't raise this objection when the grant of immunity was made in the district court, he cannot raise the issue on appeal. See *State v. Cheffen*, 297 Kan. 689, 698, 303 P.3d 1261 (2013).

IV. *The District Court Didn't Err by Allowing Officer Pfrang to Refresh his Recollection by Referring to His Police Report While Testifying at the Preliminary Hearing.*

McNellis claims that the court erred by letting Officer Matt Pfrang refresh his memory by looking at his police report—which McNellis calls a script—while testifying at the preliminary hearing. There are two problems with this argument.

First, of course, the testimony occurred at the preliminary hearing, not at trial. "As a general principle, after an accused has gone to trial and has been found guilty beyond a reasonable doubt, any error at the preliminary hearing stage is considered harmless unless it appears that the error caused prejudice at trial." *Jones*, 290 Kan. at 381. McNellis hasn't shown how allowing Pfang to refresh his memory by looking at his report during the preliminary hearing affected Pfang's trial testimony.

Second, even if it *had* some effect on the trial, we review a district court's decision to allow a witness to use memoranda or other items to refresh the witness' recollection only for an abuse of discretion. See *State v. Stinson*, 43 Kan. App. 2d 468, 478-79, 227 P.3d 11 (2010); *State v. Kelly*, 19 Kan. App. 2d 625, 627, 874 P.2d 1208 (1994). A court abuses its discretion when its decision is based on an error of law or fact, or when no reasonable person could agree with the decision. See *State v. Brown*, 51 Kan. App. 2d 876, Syl. ¶ 4, 357 P.3d 296 (2015).

It is a well-established rule that "'[a] witness while testifying, or prior thereto, may refresh his recollection by reference to any memoranda relating to the subject matter, provided he then has an independent recollection of the subject matter.'" *Stinson*, 43 Kan. App. 2d at 478 (quoting Barbara, Kansas Law and Practice, Lawyer's Guide to Kansas Evidence § 9.13, p. 309 [5th ed. 2007]). Based on the transcript of the preliminary hearing, that's precisely what happened here.

11

While McNellis was cross-examining Pfrang at the preliminary hearing, McNellis asked Pfrang if he was reading from a report. Pfrang responded that the report was in his lap and confirmed that he read parts of the report but not the entire thing. Based on that testimony and the long-standing rule that allows a testifying witness to refresh his or her recollection by looking at a report, there was no abuse of discretion in letting Pfrang keep using his report. The officer's initial practice of having it in his lap, apparently hiding its use, is not a good one; the use of a document to refresh recollection should be done transparently, not in a secretive way. But a witness who has an independent recollection of the subject matter may use a document to refresh memory. Since a reasonable person could agree with the district court's ruling, we find no abuse of discretion.

V. *We Do Not Reach the Merits of McNellis' Claims that He Received Ineffective Assistance of Counsel.*

McNellis next claims this the attorneys who represented him after Knutson were ineffective. McNellis claims that trial attorneys Gary West and Brenda Jordan and appellate attorneys Blake Robinson and Bobby Hiebert were ineffective.

McNellis wrote the district court a long letter in which he alluded to ineffective assistance from West. But other than that letter, the record shows that McNellis didn't formally raise ineffective assistance of counsel to the district court, and the district court never heard arguments or made findings of facts or conclusions of law about McNellis' claims.

As we have already noted, we usually do not consider an allegation of ineffective assistance of counsel for the first time on appeal. *Dull*, 298 Kan. at 839. While "'there are circumstances when no evidentiary record need be established, when the merit or lack of merit of an ineffectiveness claim about trial counsel is obvious,' and an ineffectiveness claim can therefore be resolved when raised for the first time on appeal, these

12

circumstances are 'extremely rare.'" *Dull*, 298 Kan. at 839 (quoting *Rowland v. State*, 289 Kan. 1076, 1084-85, 219 P.3d 1212 [2009]).

Here, there weren't proceedings in the district court to hear McNellis' claims on ineffective assistance of counsel. At least some of McNellis' claims—like his claim that Jordan allegedly refused to defend his case, or that West didn't do any investigative work— would require an evidentiary hearing to resolve. Likewise, an evidentiary hearing would be required to resolve his claims that Robinson failed to investigate the case and that Hiebert didn't do anything to help McNellis "stay the judgment and or punishment."

We see no indication that McNellis requested an evidentiary hearing on these matters in the district court. On this record, we decline to reach the merits of McNellis' ineffective-assistance-of-counsel claims for the first time on appeal. If ineffective representation by any attorney representing McNellis affected the outcome of his trial, i.e., the guilty verdict, he may seek habeas relief under K.S.A. 2018 Supp. 60-1507.

VI. *The District Court Didn't Abuse Its Discretion by Denying McNellis' Request to Have Kara Testify Electronically.*

McNellis' next claim is that the district court erred by not calling Kara McNellis to testify at trial by "'face-time,' Skype, or common programs used in all of American Courts." We review the district court's decision on this trial-procedure question for an abuse of discretion. A court abuses its discretion when its decision is based on an error of fact or law, or when no reasonable person could agree with the decision. See *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

At trial, the district court ruled that McNellis' wife, Kara, was unavailable to testify as a witness. The State then read Kara's prior testimony from the December 4, 2015 preliminary hearing. After that, McNellis asked the district court to let Kara testify

13

by Facetime or a conference call. The court denied McNellis' request because McNellis' argument "has not been accepted by our Supreme Court as a valid method to testify in court . . . ."

The trial court was wrong on that legal point. One rule, Supreme Court Rule 145 (2019 Kan. Ct. R. 217), provides for the use of electronic communication in proceedings other than a trial: "The court may use a telephone or other electronic conference to conduct any hearing or conference *other than a trial on the merits*." (Emphasis added.) For trials on the merits of the case, though, the rule points to K.S.A. 2018 Supp. 60-243(a), which allows electronic communications for testimony in compelling circumstances: "At trial, the witness' testimony must be taken in open court, unless otherwise provided by law. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."

That the trial court based its decision on a proposition that was legally in error doesn't end the inquiry, though, because "appellate courts may affirm a district court as right for the wrong reason if an alternative basis exists for the district court's ruling." *State v. Smith*, 309 Kan. ___, 441 P.3d 1041, 1047 (2019). So we still must consider whether the district court's ruling was correct under K.S.A. 2018 Supp. 60-243(a).

To get permission to present Kara's testimony electronically under that statute, McNellis had to show that compelling circumstances required letting Kara testify from Illinois. But Kara had come to Kansas and provided testimony at the preliminary hearing. McNellis didn't show the district court any reason to believe her testimony would be different at trial or that she hadn't been appropriately questioned at the earlier hearing. On appeal, McNellis has cited no way in which her electronic testimony at trial would have differed from the sworn testimony she had given at the preliminary hearing. In that case, McNellis didn't show compelling circumstances required that Kara's testimony be taken at

trial by electronic means while she remained in Illinois. The district court did not abuse its discretion when it denied McNellis' request.

VII. *McNellis' Claim of Jury Tampering Is Unpersuasive.*

McNellis next argues that the district court erred by not removing potential jurors who had "self-admitted conflict[s] of interest." McNellis seems to object generally to the way the jury panel was selected.

To consider this issue, we first review the district court's factual findings to ensure they are supported by substantial evidence. We then have unlimited review over the district court's legal conclusions. See *State v. Lewis*, 38 Kan. App. 2d 91, 93, 161 P.3d 807 (2007).

McNellis says the court should have removed four women—one because of her relationship with the State's attorney, and three others he didn't specifically name, because of their relationships with Riley County police officers. But McNellis didn't raise this issue at the district-court level, so the district court never had a chance to make either findings of fact or form legal conclusions based on those findings.

Generally, a party is precluded from raising an issue for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). And if a party raises an issue for the first time on appeal, it must explain which exception to the preservation rule applies. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); see Kansas Supreme Court Rule 6.02(a)(5) (2009 Kan. S. Ct. R. 34). McNellis doesn't explain why this issue is properly before this court when raised for the first time on appeal, and he doesn't cite an exception that would let us consider the issue. 301 Kan. at 1043. We conclude that the issue is not properly before us for consideration.

Even if McNellis had properly preserved the issue for appeal and shown some error, though, the error would be harmless. That's because none of the potential jurors who McNellis says had conflicts of interest ultimately served on the jury.

VIII. *McNellis Has Not Shown Error in the Lack of a Trial Order that Potential Jurors and the State's Attorney Could Not Use the Same Restroom.*

McNellis next objects that the district court failed to remedy the situation created when Kendra Lewison, the State's attorney, and the female potential jurors used the same public restroom. But McNellis fails to explain how this caused him prejudice, and he doesn't say what the court should have done to address the situation.

The situation is a common one in courthouses throughout the country. Many courthouses don't have separate restrooms set aside for jurors. So members of the public, attorneys, witnesses, and jurors may well end up in the restroom down the hall from the trial courtroom at the same time. Of course, chance encounters can occur in parking lots near the courthouse, at the courthouse entrance, and in other places.

Because this is a common issue, it's covered in pattern jury instructions. At the start of the case the court tells jurors not to communicate with anyone about the case and not to let anyone communicate with them about it, either. See PIK Crim. 4th 50.010. The judge in McNellis' case gave a similar instruction to the jury, telling it before the lunch break on the first day of the two-day trial that "it's your duty not to converse with or allow yourself to be addressed by any person . . .  on any subject of this trial." The judge told the jurors that "if anyone does attempt to discuss this case with you, you should notify [the bailiff] immediately." And the judge repeated that instruction when court adjourned for the day.

We presume that jurors follow the instructions, *State v. Thurber*, 308 Kan. 140, 194-95, 420 P.3d 389 (2018), so there's no reason to think that any improper discussions took place. In addition, of course, attorneys know that they are not to talk with the jurors during the trial. McNellis has not shown error in the trial court's failure to keep jurors from using the same restroom as the prosecutor.

IX. *The Prosecutor Didn't Err by Presenting Kara's Preliminary Hearing Testimony to Be Read at Trial.*

Next, McNellis raises another issue about testimony presented about statements of his wife, Kara. The State presented not only her preliminary-hearing testimony but also statements she made to others, like officers or hotel employees. For those statements, the State presented the evidence through the testimony of those other witnesses. McNellis argues that this was hearsay evidence and that the prosecutor was "taking advantage of the Defendant's lack of knowledge of the law." McNellis frames this issue as one involving prosecutorial misconduct, but the true issue is the evidentiary issue of whether the district court properly admitted the hearsay evidence at trial.

The district court first determined Kara was unavailable to testify at McNellis' trial and permitted the State to present hearsay evidence (her testimony from the preliminary hearing) rather than have her testify in person. McNellis doesn't challenge the court's decision to admit Kara's testimony from the preliminary hearing. Rather, he says the prosecutor erred by presenting evidence from other witnesses that included hearsay statements made by Kara.

McNellis is right that hearsay evidence, defined as evidence of a statement made by someone other than the testifying witness that's offered to prove the truth of that statement, is generally inadmissible at trial. K.S.A. 2018 Supp. 60-460. And McNellis is right that the statements he challenges were hearsay: different witnesses told the jury what Kara had told them about the incident in the hotel, and the State offered it to prove

17

that McNellis committed the crime charged. But just because a statement is hearsay doesn't automatically mean it can't be presented at trial; hearsay can be admitted if it meets one of the many hearsay exceptions provided by K.S.A. 2018 Supp. 60-460. Here, as we will explain in a moment, each of the hearsay statements McNellis says the State improperly introduced met an exception to the rule.

But even if there had been no applicable exception, McNellis didn't preserve an objection to this evidence for appellate review. As the State notes in its brief, McNellis didn't object to this evidence at trial. That's a requirement to obtaining appellate review of improperly admitted evidence; the trial court must first be given a chance to consider the objection. See *State v. King*, 288 Kan. 333, 341-42, 204 P.3d 585 (2009). And an attempt to reshape the argument into one of prosecutorial error can't correct the failure when the claimed prosecutorial error relates to the presentation of evidence. See 288 Kan. at 346-49. So McNellis has not preserved this issue for our review.

Because he is self-represented, though, we will summarize the hearsay exceptions that appear to have been available for each of the items of testimony McNellis has complained about on appeal:

- McNellis challenges the testimony of Arth, a former employee of the Bluemont Hotel. Arth told the jury that on the night of the incident, she received a call from McNellis' hotel room and that the caller told her that "her husband had choked her out and took their vehicle [and] . . . she said that she thought she needed to be checked out by an ambulance, so she asked that I call an ambulance for her." Under K.S.A. 2018 Supp. 60-460(d)(3), a hearsay statement can be admitted if the declarant is unavailable to testify and the statement was made "by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort." Kara's statement to Arth meets those requirements. Kara called Arth to ask for an

18

ambulance shortly after the battery took place. When Kara made that statement, the State hadn't commenced its criminal action against McNellis, and she had no reason to lie to Arth about the incident. Parts of the statement would also be admissible under K.S.A. 2018 Supp. 60-460(d)(1) and (2) as a description of her present condition (injured and needing medical attention) or as a statement made while under stress from an exciting event (having been "choked . . . out" by her husband).

- McNellis says the prosecutor erred by presenting Hill's testimony, which included Kara's statements on the night of the incident. Hill, who worked as a security officer at the hotel, told the jury that Arth called him to respond to Kara's phone call asking for assistance. He said that when he arrived to McNellis' hotel room, Kara was injured and "she wasn't explaining like in clear detail, like she was saying . . . they got into an argument, or they had been arguing, and he threw her on the bed and . . . was choking her out where she couldn't breathe or see where she was . . . ." Those statements also appear to have been admissible under K.S.A. 2018 Supp. 60-460(d) as statements made "under the stress of a nervous excitement caused by [an event or condition]" or made the statement in good faith while the person's recollection was clear.

- McNellis says the prosecutor erred by presenting Officer Wagenblast's testimony that after he responded to the 911 call, Kara told him that "she had been slapped." Once again, for an unavailable witness, this statement appears to have been admissible as a statement made in good faith while the person's recollection was clear under K.S.A. 2018 Supp. 60-460(d)(3).

McNellis makes a brief reference to the right to confront the witnesses against him, a right protected by the Confrontation Clause of the United States Constitution. But he had a chance to confront the absent trial witness, Kara, at the preliminary hearing, and he was represented by counsel at that hearing. So there would have been no Confrontation Clause violation by allowing Kara's testimony to be read to the jury at trial. See *State v. Stano*, 284 Kan. 126, 141-45, 159 P.3d 931 (2007); *State v. Young*, 277 Kan. 588, 599, 87 P.3d 308 (2004).

19

X. *Sufficient Evidence Supports McNellis' Conviction.*

McNellis also argues that there wasn't sufficient evidence to support his conviction. Because the jury—the fact-finder in this case—ruled in the State's favor, we review challenges to the sufficiency of the evidence by reviewing all the evidence in a light most favorable to the prosecution. The evidence is enough if, after reviewing the evidence in that light, we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

The State charged McNellis with violating K.S.A. 2014 Supp. 21-5413(a)(2), which makes it illegal to "knowingly caus[e] physical contact with another person when done in a rude, insulting or angry manner." The State charged that McNellis did this by hitting Kara in an angry manner. That's what the State had to prove beyond a reasonable doubt, and it did so.

First, the jury heard Kara's testimony from the preliminary hearing that she and McNellis checked into the Bluemont Hotel together on the night of the incident. It also heard testimony that police officers and a hotel security guard responded to an incident in her room.

Then the jury heard from Officer Wagenblast. He described how, when he arrived to McNellis' hotel room, he saw a "slightly red bump over her left eye" and that Kara showed him where her left ear was cut. Wagenblast also said Kara had "red marks on her neck . . . ."

Arth testified that she was working at the hotel on the night of the incident when a female called and asked her to call an ambulance because the caller's husband had choked

her out. The State also admitted an email Arth sent to the hotel's front-desk supervisor and general manager; the email said that Kara had reported that "her husband had physically abused her by hitting her in the head and choking her."

Hill, who was working as a hotel security guard, told the jury that Arth called and asked Hill to go to McNellis' room because Kara had called to report a physical assault. Hill told the jury that he saw blood dripping from Kara's ear and that she had red marks across her neck. Hill also told the jury that Kara told him that McNellis "threw her on the bed and . . . was choking her out . . . ."

Along with this testimony, the State presented Kara's written statement that said McNellis had restrained Kara in bed and that he put his hands around her neck and "repeatedly put [her] in a chokehold position and was twisting [her] neck to [the] point of pain." Kara's written statement also said that McNellis "struck [her on the] left side of [her] face about 3-4 times." And the State introduced photos of Kara's injuries and the video recordings of the statements she made to the responding officers.

The State needed merely to show that McNellis had struck her one time that night in anger. The evidence the State presented was more than enough to support McNellis' conviction for battery against Kara.

XI. *McNellis Has Not Shown Error in the District Court's Issuance of Arrest Warrants for McNellis.*

Last, McNellis claims the district court erred by issuing arrest warrants for him while he has been on probation. He alleges that the first warrant for a probation violation was issued without giving him a chance to "appear and defend." He argues that a second warrant was issued in retaliation because he was exposing public corruption in the courts.

Under K.S.A. 2018 Supp. 22-3716(a), "the court may issue a warrant for the arrest of a defendant for violation of any of the conditions of release or assignment . . . ." Subsection (b) instructs that "[u]pon arrest and detention pursuant to subsection (a), the court services officer or community correctional services officer shall immediately notify the court and shall submit in writing a report showing in what manner the defendant has violated the conditions of release or assignment or a nonprison sanction." K.S.A. 2018 Supp. 22-3716(b)(1). These statutes do not require a defendant to have the chance to defend himself *before* the arrest warrant is issued. Like other warrants, this one may be issued on probable cause; the defendant has a chance to explain and defend his conduct after arrest.

Here, the State moved to revoke McNellis' probation based on allegations that McNellis had violated his probation by not reporting to his probation officer. Based on an affidavit, the court issued an arrest warrant against McNellis. The record shows that the court followed prescribed procedure when issuing a warrant against McNellis.

McNellis apparently argues that the second bench warrant that the court issued against him was unlawful because it had an unlawful purpose. If so, the matter should have been addressed first in the district court. Once again, issues generally must be first addressed in the district court. If an issue is to be addressed first on appeal, the party raising it must tell us what exception allows the presentation of the issue here first. *Godfrey*, 301 Kan. at 1043.

McNellis has not shown error, and we affirm the district court's judgment.